## KERR & Others *v.* SOUTH PARK COMMISSIONERS.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE NORTHERN DISTRICT OF ILLINOIS.

Argued January 21, 1886.—Decided March 29, 1886.

A jury being empanelled on the law side of the court below to settle an issue
sent from the chancery side, rendered a verdict which was certified by the
clerk to the chancery side, and thereupon a decree was entered in con-
formity with it. At the next succeeding term the court ordered a transcript
of the evidence on the trial of the issue, together with the charge of the
court, to be filed on the chancery side. *Held,* That this order *nunc pro tunc*
was proper in order to prevent injustice, and was within the power of the
court.

A verdict on an issue from chancery was taken on the law side of the court,
and was subsequently set aside there, and a new trial ordered there, which
was had with a second verdict on the same issue. This second verdict was
certified to the chancery side of the court, and a decree was made there
founded upon it, in which the setting aside of the first verdict was recited.
*Held,* That this was an approval, adoption, and confirmation of the acts
on the law side of the court recited in the decree.

Plaintiff's land was taken for a public park by right of eminent domain. On
a trial before a jury to determine its value on the day when the Park Com-
missioners took possession of it, plaintiff offered to show the prices at which
sales had been made of lands immediatetely adjoining the proposed park,
which derived special benefit from its location, which sales were made after
the exterior lines of the park had been determined. *Held,* That it was
inadmissible.

The true rule for damages in this case is stated in *Cook* v. *South Park Com-
missioners*, 61 Ill. 116.

The case is stated in the opinion of the court.

*Mr. Edward S. Isham* for appellants.

*Mr. Melville W. Fuller* for appellees.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The proceedings and decree brought here for revision by this
appeal are in execution of the mandate of this court affirming
a former decree in the cause, the appellants being the executors
and devisees of William P. Kerr, the original complainant, in

whose names, upon his death since the decree, the cause has been revived.

The original litigation established the title of Kerr to the premises in controversy, subject to the right of the appellees, the South Park Commissioners, who had taken possession of the lands on August 27, 1870, to appropriate them for the public use as a part of a public park in the city of Chicago, on payment of their value on that day.

It was ordered by the decree that the South Park Commissioners pay to the complainant "the value of the premises on the twenty-seventh day of August, A.D. 1870, known and described as the south fractional half of section thirteen, in township thirty-eight, north of range fourteen, east of the third principal meridian, except lots 9, 10, and 15, in Chas. B. Phillips' subdivision of 26 acres off the west side of the S. W. ¼ of said section thirteen according to plat of same recorded in the recorder's office of Cook County, in book 98 of maps, p. 9, and the east half of said southwest quarter of said section thirteen, together with interest thereon from the twenty-seventh day of August, A.D. 1870, at the rate of 6 per cent. per annum, upon the conveyance of said premises by the complainant, William P. Kerr, and his assignees, claiming under him since the commencement of this suit, by deed which shall release to the South Park Commissioners all interest of the said complainant and his assignees. And it is further ordered that the value of said premises required to be paid be ascertained as follows: A jury shall be empanelled in this court, on the law side thereof, to hear the evidence submitted by both parties, and said jury shall determine by their verdict the value of the land hereinbefore described on the twenty-seventh day of August, A.D. 1870, the time when possession was taken by the South Park Commissioners, and the verdict shall be certified by the clerk to the chancery side of this court, and the amount so found shall be considered as the value of said premises on the day, aforesaid, unless set aside or changed by the further order of this court. And it is further ordered that the complainant, William P. Kerr, make a deed and procure deeds to be made by all persons claiming under him since the commencement of this

suit, conveying to the South Park Commissioners the premises aforesaid, when they shall pay the amount found to be due, with interest from the twenty-seventh day of August, A.D. 1870, at the rate of six per centum per annum; and the court denies any relief to the complainant as to the east half of the southwest quarter of section 13 aforesaid, and it is ordered that the bill of complaint be dismissed as to that part of the premises. And it appearing to the court that the South Park Commissioners have commenced proceedings to condemn the undivided one-quarter of the west half of the southeast quarter of section twenty-four, in township thirty-eight, north of range fourteen, east of the third principal meridian, another of the tracts described in the bill belonging to the complainant, it is ordered that all questions touching the same be reserved for the further order of the court."

Afterwards, at the October Term, 1884, the issue directed by the decree of October 8, 1878, was tried by a jury, who returned a verdict fixing the value of the tracts of land in controversy, comprising one hundred and eleven acres, as of the date of August 29, 1870, at $155,400, which verdict was certified by the clerk to the chancery side of the court as by the decree was directed.

And thereupon, on January 20, 1885, the following decree was entered:

"This cause coming on to be heard upon the pleadings, orders, and decree of October eighth, 1878, herein, and the mandate of the Supreme Court herein filed May seventeenth, A.D. 1882, and the verdict of the jury rendered upon the law side of this court on the sixteenth day of December, A.D. 1884 (the motion to set aside the same having been overruled), and certified by the clerk to the chancery side of this court, determining the value of the tracts of land described in the decree herein entered on the eighth day of October, A.D. 1878, to have been on the twenty-seventh day of August, A.D. 1870, the sum of one hundred and fifty-five thousand four hundred dollars, and the evidence, rulings, and charge of the court upon the trial of the issue as to said value, it is hereby ordered, adjudged, and decreed that said amount of one hundred and

fifty-five thousand four hundred dollars be, and it is hereby, adjudged to be the value of said tracts of land at that date; and it appearing to the court that the said complainants cannot at present comply with said decree of October eighth, 1878, and that various claims are set up as against said complainants to said tract, or portions thereof, it is ordered that the South Park Commissioners pay into court the said sum of one hundred and fifty-five thousand four hundred dollars, with interest thereon from the twenty-seventh day of August, A.D. 1870, at the rate of six per cent. per annum to the date of such payment, and that upon such payment into court the said South Park Commissioners be discharged from further liability for interest in the premises, and that the distribution of said money when paid into court be reserved until further order.

"And the South Park Commissioners exhibiting to the court the pleadings, orders, proofs and decree of August twenty-sixth, 1882, in a certain cause on the chancery side of this court, wherein the South Park Commissioners was complainant, and Susie M. Kerr, Rosa L. Kerr, and Joseph B. Kerr, executors, etc., of William P. Kerr, deceased, and others were defendants, wherefrom it appears that on the twenty-ninth day of November, 1879, the sum of eighty-two thousand eight hundred dollars, and on the twenty-sixth day of February, 1880, the sum of seventy-two hundred dollars, of the moneys of the said South Park Commissioners came to the hands of the said Kerrs, complainants in this case, and that the sum of forty-two hundred and twenty dollars and nineteen cents was paid into this court in that suit December first, 1882, as appears from the order of this court in that cause on that day entered, all these moneys being paid on account of the lands in this cause mentioned; and it further appearing that the sum of twenty-five thousand dollars was paid into court in this cause on the eighteenth day of February, 1884, on account of said lands, it is ordered that said several sums of eighty-two thousand eight hundred dollars, with interest from November twenty-ninth, 1879; seventy-two hundred dollars, with interest from February twenty-sixth, 1880; forty-two hundred and twenty dollars and nineteen cents as of the date of the payment into court herein

provided for, and twenty-five thousand dollars with interest from February eighteenth, 1884, be applied on said principal sum of one hundred and fifty-five thousand four hundred dollars, and interest, and that the South Park Commissioners pay into court under this decree only the balance thereby arrived at, together with the commission provided by law thereon, and the sum of two hundred and fifty dollars, the commission on the sum of twenty-five thousand dollars so paid February eighteenth, 1884, as aforesaid, and interest thereon from that date.

" And it is also ordered that the deed of James R. Doolittle referred to in said decree of August twenty-sixth, 1882, in the cause of the South Park Commissioners against Susie M. Kerr and others may be executed and delivered to said South Park Commissioners; and that thereupon said sum of forty-two hundred and twenty dollars and nineteen cents may be taken from the registry of this court by said complainants Kerr without prejudice to any appeal in said cause in which said money was so paid into court, and deed directed to be delivered as aforesaid."

From this decree the complainants have brought the present appeal.

At the next succeeding term of the Circuit Court after that at which the decree appealed from was entered, it appears by the transcript of the record that the court permitted to be filed and made part of the record a certificate of the evidence adduced on the trial of the issue, together with the charge of the court to the jury, verified by the signature of the circuit judge. It appears also from the recitals in the decree of January 20, 1885, that the hearing had taken place upon the pleadings, orders, and decree of October 8, 1878, and the mandate of the Supreme Court filed May 17, 1882, and the verdict of the jury rendered upon the law side of the court on December 16, 1884, the motion to set aside the same having been overruled, certified by the clerk to the chancery side of the court, determining the value of the tracts of land described in the decree of October 8, 1878, to have been on August 27, 1870, the sum of $155,400, and the evidence, rulings, and

charge· of the court upon the trial of the issue as to said value.

We cannot, as we are asked to do by counsel for appellees, disregard the evidence and rulings of the court on the trial of the issue, which are certified by the court as authentic and correctly reported, and which the decree recites·to ,be the basis of its findings, because they were not certified and brought on the record at the same term at which the decree was entered. .The subsequent certificate merely ascertains and verifies what proceedings took place before the court at the time of the hearing, and although they should regularly have been brought on the record at the same term, we know of no rule of chancery practice or procedure which forbids,the making of a *nunc pro tunc* order to supply. such an omission and to prevent injustice.

On the other hand, we are asked to disregard ·the verdict recited. in the decree as a nullity, and consequently to reverse the decree itself on that account, because, as it is alleged, there was a prior verdict rendered on the· same issue on November 5, 1883, which had never been regularly 'or lawfully set aside. But no such verdict appears in the record, otherwise than by a 'recital in an order of the court made on February 18, 1884, by which it is set aside and a new trial awarded.   It is objected that that was a proceeding on the law side of the court, and that the verdict was never certified to the chancery side of the court, where alone proceedings to set it aside could have been properly taken.   It is a little difficult, no doubt, to keep entirely separate, proceedings, in the same cause, part of which take place on the law side, and part on the chancery side of the same court, when all are conducted by the same judge; but no confusion results in the present case, because whatever was done on the law side was approved and adopted by the chancellor, who, in framing his decree on the basis of the verdict of December 16, 1884, necessarily confirmed the action of the circuit judge in setting aside the previous verdict of November 5, 1883.

On the trial of the issue before the jury as to the value of the land in question taken by the appellees for the purposes of the park, the appellants offered to prove, as tending to show

the value of their land, the prices which had been actually paid on sales of similar property situated so as to adjoin the park, or be within its immediate vicinity, sales which had taken place after the lines of the park boundaries had been definitely ascertained and laid out. This evidence was rejected, and this ruling, together with the charge of the court to the jury on the point, are assigned as error to the prejudice of the appellants.

The portions of the charge of the court to the jury objected to on that ground are as follows:

" A number of witnesses testified that the agitation of the park project, the anticipation that the legislature would authorize the appropriation of lands to establish a park in the vicinity of the present South Park, and the introduction of the bill into the legislature, which finally became a law on the ——— day of February, 1869, materially enhanced the value of lands embraced in the present park lines, as well as the lands adjacent thereto and in that vicinity. Any resulting benefits to the lands within the proposed park from this and other causes, such as the growth and prosperity, or the anticipated growth and prosperity of the city of Chicago, you should take in account in determining the amount that will fairly compensate the owner. But a number of witnesses also testified, and there seemed to be less agreement upon this point than upon some others, that the passage of the park act, its ratification by the people, and the fixing of the proposed park boundaries by the legislature, gave to the lands immediately fronting upon and in the vicinity of the park, including the Midway Plaisance and the boulevards, an additional value solely on account of their being without the proposed park lines, but adjacent to the park, the plaisance and the boulevards, or near enough thereto to receive the special benefits resulting from such improvements. In the nature of things the lands within the proposed park, and which were to constitute it, could not have been thus specially benefited, and the owner of the lands in question should be allowed nothing on the ground that his property was thus specially benefited. Even the witnesses who testified upon this branch of the case for the owner admitted that the outlying lands received a benefit from their

location or relation to the park which the lands constituting the park did not receive.

"Sales of property of like character and quality, similarly situated and affected by the same causes, made under circumstances likely to produce competition among bidders, are sometimes resorted to in determining the value of lands; but inasmuch as the lands adjacent to and in the vicinity of the park, plaisance, and boulevards received a special benefit, and were subject to a special burden by reason of the existence of the park, plaisance, and boulevards, their situation and that of lands embraced within the park lines were relatively so different that outside sales afforded no just grounds for determining the character of the lands taken for the park, and hence all evidence of such sales was excluded, and you are again instructed that there is no such evidence before you.

"It is for you to say whether any of the experts in giving their opinions of the value of the two tracts in question were influenced, if at all, by knowledge of sales of lands which received a special benefit by reason of their peculiar relation to the park, plaisance, and boulevards. To the extent that any of the witnesses based their opinions upon a knowledge of such sales, their evidence should be disregarded. It is for you to say, however, whether any of the witnesses gave opinions upon this basis.

"Situated as they then were, what were they worth in cash or on terms equivalent to cash in the market, if a market then existed for such lands? It is to be borne in mind—it was then known—that these lands were within the park lines and designated for park purposes. What would any one needing lands for residence, business, or any other purpose, have paid for them in cash? You are not at liberty to place a value upon those lands upon the basis of what some one might have been willing to have bought them for on time at the date named for purely speculative purposes.

"Now, what you are to do is simply [to] determine, as I instructed you yesterday, the value of that land on the 27th August, 1870. The market value was what land would have sold for in cash, or on such time and terms as would be equiv-

alent to cash. Was there any demand; was there any market for land situated as this was at that time? What evidence is there before you, if any, showing that the lands within the park lines, or the designated park lines, were changing hands after the passage of the park act?

"In that connection, however, you will bear in mind that many of the witnesses, most of them, perhaps, testified that the final passage of the park act, and its ratification, resulted in special benefit to the lands around the park and in its vicinity, and that the lands within the park lines did not receive this special benefit. For this special benefit you will allow nothing."

We think the evidence offered was properly excluded, and that the true rule for the valuation of the property was correctly and fairly stated in the charge of the court above quoted. It is strictly in accordance with the law of Illinois as understood and expounded by the Supreme Court of the State.

In *Cook* v. *South Park Commissioners*, 61 Ill. 115, 123–4 the court say :

"The court did not err in refusing to give the eighth, ninth and tenth instructions for appellant. The eighth and ninth are substantially that, if lands adjacent to the park generally increased in value in consequence of the prospect of establishing a public park, then the lands of appellant must share in such increase. This does not fairly or necessarily follow. The adjacent lands would probably, from their peculiar situation, derive a special benefit, and were subject to a special burden. The lands needed for the park must be purchased and the park maintained by special assessments upon the adjacent lands. Their situation relatively was so different that they were not a proper standard by which to judge the value of the lands taken for the park."

We find no error in the decree, and it is accordingly

*Affirmed.*