THE PEOPLE OF PUERTO RICO, ETC., Plaintiff and Appellee,
v. THE OCEAN PARK DEVELOPMENT CORPORATION ET AL.,
Defendants and Appellants.

No. 10452. Argued December 4, 1951.—Decided April 24, 1952.

*Lino J. Saldaña, Luis F. Sánchez Vilella, José Trías Monge,*

*Sarah Torres Peralta* and *C. Morales, Jr.,* for appellant Ocean Park Development Company. *Brown, Newsom & Córdova,* for appellants Segarra-Boerman and González-Paniagua. *Víctor Gutiérrez Franqui, Attorney General, Clemente Pérez Martínez* and *Jaime J. Saldaña, Assistant Attorneys General,* for appellee.

MR. CHIEF JUSTICE TODD, JR., delivered the opinion of the Court.

The People of Puerto Rico, represented by Mr. Julio Enrique Monagas, Chairman of the Public Recreation and Park Commission of Puerto Rico, and under the authority vested in the latter by Act No. 4 of June 30, 1947, (Spec. Sess. Laws, p. 6) and Act No. 141 of May 10, 1948, (Sess. Laws, p. 326) filed on November 30, 1948, a condemnation suit to obtain title in fee simple over approximately 21 cuerdas of land located at the site of the Santa Teresita developments and adjoining the end of the Ocean Park development in Santurce. Said lands were being condemned in order to construct and establish a public recreation park.

The aforesaid 21 cuerdas of land were made up of three adjacent parcels, one of 5.7034 cuerdas facing the Atlantic Ocean, bounded by the Ocean Park development and owned by the defendant Ocean Park Development Corp. (hereinafter referred to as Ocean Park), and the other two, of 13.9638 and 1.50 cuerdas each, facing the extension of Loíza Street and belonging to the defendants Felipe Segarra and Eduardo G. González (hereinafter referred to as Segarra and González.)

The plaintiff attached to his complaint a declaration of taking and immediate material delivery, depositing the amount of $206,138 at which he estimated the fair and reasonable market value of the lands taken. Part of that sum, the amount of $57,964, was deposited as the estimated value of the parcel of 5.7034 cuerdas belonging to Ocean Park, and $148,174 as that of the parcels of 15.4638 cuerdas belonging to Segarra and González.

Both defendants prayed for and obtained from the Court of Eminent Domain the delivery of the aforesaid amounts, but reserved the right to claim a greater amount as just compensation.

Defendants Segarra and González in their original, as well as in a later amended answer, alleged that the just and reasonable market value of their 15.4 cuerdas was $303,894.27, or $5.00 per square meter. In its amended answer the codefendant Ocean Park claimed a value of $134,500.07 for its 5.7 cuerdas, that is, $6 per square meter.

Trial was held jointly, as agreed to by the parties, and it was decided that the evidence presented would apply to both defendants. The Court of Eminent Domain entered judgment fixing the final compensation to be received by Ocean Park at $61,645.90, that is, $2.75 per square meter, and the compensation to be received by Segarra and González at $151,947.15, that is, $2.50 per square meter, and ordered the plaintiff to place at the disposal of the codefendants the amounts of $3,681.90 and $3,773.15, plus interest at 6 per cent per annum from November 30, 1948, until the date of deposit. The codefendants Ocean Park and Segarra and González, as well as the People of Puerto Rico, appealed from said judgment. The latter subsequently desisted from its appeal. The cases were consolidated and we shall decide them in a single opinion.

Ocean Park assigned three errors and Segarra and González two, which are similar to the last two of Ocean Park. We shall refer to them further on.

 The first assignment of the corporation is to the effect that the court *a quo* erred in admitting in evidence, despite its objection, and in order to determine the market value of the condemned parcel, certificates of the Registry of Property regarding several sales, which the plaintiff presented as evidence of the price at which lands similar to those condemned were sold.

Indeed, while testifying as an expert appraiser and upon referring to the manner in which he had appraised the lands to be condemned, Ferdinand Acevedo, plaintiff's witness, positively stated that one of the most important factors of those he took into consideration was the price at which similar lands had been sold on recent dates. This evidence for the plaintiff was expressly presented as to both defendants and it was likewise considered by the court for, when the hearing of this evidence began, the following took place:

"Q. Can you tell which sales you took into consideration? Your Honor, the fact is that, even though we are presenting evidence with respect to Segarra and González, there is evidence of such a nature that we are going to utilize it with respect to Ocean Park. The questions of similar sales and some of the factors he took into consideration.

"Hon. Judge: The Court will do the same as with the evidence presented with regard to the defendants. It must have the same weight, differing as to location, physical aspect and topography. *But as to similar sales, surroundings, it must apply all that to both cases.*" (Italics ours.)

The witness then referred to the sale made on March 8, 1948,[1] of a 5-cuerda lot located at a distance of 800 meters from the condemned parcel, near the Punta Las Marías development. Counsel for Segarra and González interrupted the witness to request that it be specified whether the witness was testifying of his own knowledge or of knowledge obtained from a deed, whereupon the witness answered that he derived his knowledge from an investigation made in the Registry of Property of Río Piedras. A certificate issued by the Registrar was then offered. Thereafter the following took place:

"Mr. Córdova: We object if that independent evidence is presented as evidence of a similar sale. If it is presented as the transaction he took into consideration to form his opinion in this case, we have no objection. We admit that he took said transaction into consideration to form his opinion. We shall

---

[1] It was later corrected to July 31, 1947.

prove it in the cross-examination. We do not accept it as a similar sale in this case.

"Mr. Pérez Martínez: It seems to us that the witness has determined the points of similarity which in his judgment that property has.

"Hon. Judge: Are you going to submit it?

"Mr. Gutiérrez: I object. We object further because the certificate is not admissible in evidence. There is no evidence as to the price.

"Hon. Judge: I think that the selling price is in the certificate.

"Mr. Gutiérrez: That is no proof of that fact *because it is hearsay evidence*.

"Mr. Córdova: We did not make that objection because the seller in that case is Segarra and González." (Italics ours.)

After the questions raised were argued the court decided:

"The Court admits for the present the certificate to show that the witness took that sale into consideration when appraising said lands. The Court will decide the other two points after hearing the evidence for the plaintiff and evidence in rebuttal."

Just as it admitted the first, the court admitted thirteen other certificates in connection with as many sales, always over defendants' objection. After a recess, however, it ruled, as to the specific point that the certificates of the Registrar were not admissible to prove the price paid in similar sales, as follows:

"The court will decide the question raised by the defendant Ocean Park to the effect that the price contained and the price which appears in certificates of the Registrar or in certified copies of deeds of lands attempted to be introduced in evidence as similar sales, is not admissible unless an opportunity is given to cross-examine the parties or some of them, as follows: the court deems that said document (*sic*) is not universal. It has been held in Illinois that such evidence is admissible as prima facie evidence of the price paid for similar lands. Secondly, there is generally no Registry of Property, as we have in Puerto Rico, in the places where said doctrine has been laid

down, with the exception of Louisiana and California. It is presumed that the price which appears in the Registry and in the certified copies of deeds is the correct price and the one agreed to between the parties. Of course, the party aggrieved by said evidence should obtain, pursuant to the decisions of Puerto Rico, possible evidence as to whether there has been any other consideration besides the value appearing in the deeds, but this must be proved by the aggrieved party, either by challenging the testimony of the witness by cross-examination or by other evidence. The question is overruled. I admit the evidence in connection with the price paid for the other parcels described in those certificates as similar lands."

The court stated that this question had not been decided in Puerto Rico.

The attorney for Ocean Park moved for reconsideration citing § 1172 of the Civil Code, 1930 ed.,[2] and the court ratified its order.

The appellee raises two questions to support his claim that this error was not committed. First, that the defendants also presented certain deeds of sales of lots and are, therefore, precluded from raising this question and, second, that said certificates of the Registrar are prima facie evidence of the facts set forth in the entries in the books of the Registry of Property and cites § § 48, 49, 70 and 71 of the Law of Evidence (Nos. 410, 411, 432 and 433 of the Code of Civil Procedure.)[3]

---

[2] Section 1172 provides as follows:

"Section 1172.—Public instruments are evidence, even against a third person, of the fact which gave rise to their execution and of the date of the latter.

"They shall also be evidence against the contracting parties and their legal representatives with regard to the declarations the former may have made therein."

[3] These Sections provide:

"Section 410.—Every public officer having the custody of a public document is bound to give him, on demand, a certified copy of it on payment of the legal fees therefor, and such copy is admissible as evidence in like cases and with like effect as the original writing.

"Section 411.—Public documents are divided into four classes:

1. Laws. 2. Judicial records. 3. Other official documents. 4. Public records kept in Puerto Rico, of public or private documents."

Since in our judgment the appellee is right as to the second ground, we need not consider the first.

The purview of the Sections of the Law of Evidence quoted by appellee, and especially § 71, render inapplicable in Puerto Rico the doctrine set forth in the cases and authorities we cited in *People* v. *Lamboglia*, 70 P.R.R. 773, n. 1, p. 775, and in which, by way of a dictum, we assumed that evidence of this nature—certificates of the Registrar and public deeds—was inadmissible. The *ratio decidendi* in said case was to the effect that said evidence was admissible to impeach the testimony of an expert. The assumption set forth in the opinion as to its inadmissibility for other purposes was based on the doctrine prevailing in American jurisdictions without taking into consideration the provisions of our Law of Evidence.

Pursuant to the aforesaid Sections of the Law of Evidence and to § 45 of said Law (§ 407 of the Code of Civil Procedure), in connection with § 1170 of the Civil Code, 1930 ed.,[4] a certificate of a recording officer is a public document—Manresa, Civil Code, Tome 8, Vol. 2, Fifth Ed., p. 31—and is admissible in evidence in like cases and with like effect as the original writing and is prima facie evidence of the facts therein stated. Nevertheless, those facts may be challenged by other evidence contradicting or overcoming them. Section 11, Law of Evidence (§ 373, Code of Civil

"Section 432.—A public record of a document may be proved by the original record, or by a copy thereof certified by the legal keeper of the record.

"Section 433.—Entries in public or other official books or records, made in the performance of his duty by a public officer of Puerto Rico, or by another person in the performance of a duty specially enjoyed by law, are prima facie evidence of the facts stated therein."

[4] These Sections provide:

"Section 407.—Public documents are such as are specified in Article 1184 of the Civil Code." (Section 1170 of the Civil Code, 1930 ed.)

"Section 1170.—Public instruments are those authenticated by a notary or by a competent public official, with the formalities required by law."

Procedure) ; *Camacho* v. *Balasquide*, 19 P.R.R. 564, 576–7; *Moll* v. *Llompart*, 17 P.R.R. 666, 671; *cf. Negrón* v. *Corujo*, 67 P.R.R. 371, 374. It goes without saying that the certificates of the Registrar may be taken into consideration by the expert, together with other evidence within his reach, in order to express his opinion as to the market value of the condemned lands. Furthermore, we consider that § 1172 of the Civil Code, *supra*, cited by the appellant, does not overcome the scope, as prima facie evidence, of the admitted certificates of the Registrar. Manresa *op. cit.*, pp. 40–43. The first error assigned was not committed.

■■ The second error assigned by the appellant Ocean Park, which is the same as the first error assigned by Segarra and González, is to the effect that the lower court discarded and failed to consider, in order to determine the market price of the condemned lands, the admitted evidence of the sale made by Segarra and González to Frank Ramírez de Arellano of 45,000 square meters of land adjacent to that taken, at $4.50 per square meter. It is on these same lands that the Santa Teresita development is located at present.

The appellants present several arguments to show that this error was committed. They stress the fact that the lower court, having admitted the ample oral and documentary evidence in connection with the sale made by Segarra and González to Ramírez de Arellano, in deciding the case declared:

"Although we admit this evidence to study its scope and consider its weight we are convinced that it *lacks any probative value* for the final determination of the market value of the property taken from the defendants.

"The Legislature of Puerto Rico enacted on May 10, 1945, Act No. 159, by virtue of which it vested in the Commissioner of the Interior power and authority to plan, construct, develop, care for, exploit, administer and maintain for the people places of recreation, and declared of public utility all real property and its accessories, interests and rights which said Commis-

sioner deemed necessary for such purpose, and empowered him further to avail himself of condemnation proceedings without the previous declaration of public utility provided for in the General Condemnation Act.

"Section 9 of the aforesaid Act was amended by § 4 of Act No. 4, approved June 30, 1947. The amendment consisted in vesting the powers previously listed directly in the Public Recreation and Park Commission.

"Making use of these powers, first the Commissioner of the Interior and then the Commission, deemed it necessary to acquire, in order to create a public recreation park on Loíza Street of Santurce, the lands comprised in the parcels taken, and submitted the acquisition project to the Planning Board. This Board approved it by orders of June 12, 1946, and September 3, 1947.

"The evidence discloses throughout the testimony of Eduardo G. González, Gabriel Ferrer and Telesforo Carrero that on two or three occasions the defendants were present at hearings held in the Planning Board in connection with the Santa Teresita and Ocean Park development projects, at which the establishment of the recreation park was studied and discussed. So much so that in every plat prepared by Del Valle in 1947, the lands appear, as we have said, earmarked for this purpose.

"It was after the Public Recreation and Park Commission selected the lands and the Planning Board approved the segregation and acquisition thereof, that the Legislature enacted Act No. 141 of May 10, 1948, making the necessary appropriation for the acquisition thereof.

"The defendants assert that the court must consider the increment prior to May 10, 1948, to determine the market value of the property taken, and allege that should it be held that there was any increment due to the park project, such increment must be the one which arose after that date. They invoke the decisions of *Kerr* v. *South Park,* 117 U. S. 379 (29 L. ed. 924) ; *Shoemaker* v. *United States,* 147 U. S. 282 (37 L. ed. 170) and *United States* v. *Miller,* 317 U. S. 369 (87 L. ed. 336.)

"The court does not harbor the least doubt that the cases cited sustain a doctrine entirely contrary to the doctrine advanced by the defendants. If we apply it to the state of facts under consideration, we must reach the inescapable conclusion

that one of the main considerations that led Ramírez to pay $4.50 per square meter was the fact that the establishment of the park among the adjacent lands rendered the latter more attractive for the construction of houses for dwelling purposes. Not only did he admit this circumstance, but he also utilized it as an attraction in an advertisement published in the local newspapers on May 22, 1948, which includes a picture of one of the sheets of the plans drawn by Del Valle y Cía.

"We understand that the Government of Puerto Rico decided to construct the projected park from the moment *the Commissioner of the Interior selected the aforesaid lands in 1946, complying with the provisions of the Act approved May 10, 1945.* The date on which the actions and measures adopted by said Commissioner, by the Public Park and Recreation Commission and by the Planning Board were compensated (*sic*) is the controlling date as to when the increment of value of the adjacent lands due to the construction of a work for public purposes must be considered, in a case like this.

"It has been held that the owner whose property is condemned ought not to gain by speculating on probable increase in value due to the Government's activities. (*U. S. v. Miller, supra*)." (Italics ours.)

The appellants argue then that what the trial court actually did was to determine, after the case had been closed, that evidence of that sale was inadmissible to prove the value of the condemned lands because it was not a sale of similar lands and applied, therefore, erroneously, the rule of exclusion of evidence established in the cases of Kerr (117 U. S. 379), Shoemaker (147 U. S. 282) and Miller (317 U. S. 369) cited in its opinion. The appellants further maintain that the action of the court was erroneous pursuant to our decision in *Viera v. Heirs of Goitía*, 60 P.R.R. 637, wherein we held, citing from the syllabus, that "After evidence in a case is definitely admitted and the trial has closed, neither the presiding judge nor his successor can strike it from the record or refuse to consider it, at least without reopening the case and giving the affected party an opportunity to supply the resulting deficiency in his or her proof."

For a better understanding of what really happened in connection with the aforesaid evidence, we must quote from the record again. At page 744 of the second part, in the transcript of the evidence, plaintiff's attorney ·addressed the court and prayed that all the evidence regarding the sale of the Santa Teresita lands be stricken because it had been proved that on the date Ramírez de Arellano acquired them, the site of the adjacent land, involved in this action, had already been determined with certainty for use as a public park. The following incident took place them:

"Mr. Córdova Díaz: This is a waste of time. *All this can be argued by brief.*

"Plaintiff: *Therefore, we pray the court to strike all that evidence on those grounds.*

"Mr. Córdova Díaz: *I think that that question can be argued by brief, as to the probative value that said sale may have.* Furthermore, I think that that case was reversed by the Supreme Court.

"The Court: No. One of the issues this court must determine in this case is whether on the date Segarra and González sold the land to Frank Ramírez *the purpose to construct the ball park already existed by legislative enactment.* The court has to determine this in accordance with the evidence presented and the applicable law.

"Mr. Córdova Díaz: There is no law.

"Mr. Gutiérrez Franqui: Excuse me your Honor, that case holds that enactment of legislation can not be a taking. It has no weight because such legislation may be repealed, or appropriations may fail, and a lot of things may happen. This is found in a paragraph of this case (*Miller* v. *United States,* 125 F. 2d 75) : that enactment of legislation can not be a taking, nor any thing in connection with the date to determine the market value.

"The Court: In the second place, one thing that Frank Ramírez de Arellano himself testified upon being examined by plaintiff's attorney, was that he considered that the establishment of a public park in that area enhanced, gave certain increase in value to the adjacent lands, which the court must also consider. *For that reason, the court denies the motion to strike*

*in order to give it whichever weight it may have. The parties must stress in their briefs the weight which they consider that said evidence has, and the court will decide."* (Italics ours).

Thus, although the lower court refused to strike the evidence, it is quite clear that at the request of counsel for Segarra and González, it left to be discussed by brief whatever weight said evidence might have, stating that the court would then decide. And that is what it did in that part of its opinion above-copied: it did not exclude the evidence as the appellants aver. Rather, it did not give it any probative value. Obviously, these facts are quite different from those which motivated our decision in *Viera* v. *Heirs of Goitía*, *supra.*

Now, did the court *a quo* err in deciding that the sale of the lands of Segarra and González to Ramírez de Arellano lacks any probative value? We do not think so. Regardless of the independent factor of the increment of value said lands might have gained due to the fact that the parcels condemned herein were earmarked by the Commissioner of the Interior, the Public Recreation and Park Commission with the assistance of the Planning Board and the appropriation of funds by the Legislature of Puerto Rico in order to establish a park,[5] there were other factors in the transaction between Ramírez de Arellano and Segarra and González which the former took into consideration to pay $4.50 per square meter That the lower court took all those factors into

---

[5] As regards this factor, the first paragraph of § 2 of Act No. 479, approved April 26, 1946, provides:

"In case of the purchase or condemnation of private property for purposes of public utility or social benefit, *the compensation shall be based on the reasonable value in the market of such property, without including any increase due to well-founded and reasonable expectation that the property acquired, or other property similar thereto, or situated within the locality where the former is situated, may* now or later be required for public use or social benefit, or be necessary for some use to which it can be applied only by the People of Puerto Rico or any agency or instrumentality thereof with power for the condemnation of private property." (Italics ours.)

consideration was clearly set forth in its opinion when it describes said transaction thus:

"Frank Ramírez de Arellano negotiated with Segarra and González to purchase 45,000 square meters at the rate of $4.50 each located west of the parcel taken, and to that effect, a private contract was executed on January 19, 1948, by virtue of which the purchaser delivered $20,000 at once and bound himself to pay the balance within a year from the date the urbanizing plans were approved by the Planning Board, but also binding himself to pay periodically to the sellers $6 per square meter of any lots Ramírez should sell until the deferred price were paid in full, although the latter price would always have to be paid within the year.

"Besides this, there were other considerations. The sellers gave Ramírez an option to purchase the remainder of the property which had an area of 113,547.25 square meters, located east of the condemned parcel, which was to be governed by the same terms and conditions of the former and which Ramírez was bound to enforce eight months after the plans were approved by the Planning Board.

"The sellers also bound themselves to obtain from the Planning Board the approval of the urbanization plans which had been prepared by Del Valle y Cía., and for which the sellers had paid $8,000 on March 31, 1947, which sum was not charged to Ramírez in the selling price.

"It should be pointed out that the three condemned parcels appear demarcated in the aforesaid plans with a note which textually reads: 'Area required for park by Planning Board.'

"The sellers were also bound by the contract to give a warranty in case of eviction of the lands sold and to deliver them free from unlawful occupants, usufructuaries or possessors.

"Subsequently and after the parties had complied with the clauses and conditions of the contract, as modified by mutual agreement on November 10, 1948, as to how the purchaser was to pay the deferred price to the sellers, certain public deeds were executed, copies of which were presented in evidence.

"In connection with this transaction, Ramírez testified during the trial that if he had not been granted easy terms of payment and the other concessions set forth in the contract, he would not have paid for the aforesaid parcels at $4.50 per square meter. He admitted that the project to construct a

public recreation park between the eastern and western sections of the Santa Teresita development undoubtedly increased the value of adjacent lands. He did not determine the difference in value of such adjacent lands before and after the project was made known. Nor did he give us his estimate of the value of the special considerations granted by the sellers throughout the transaction."

We have examined thoroughly the evidence regarding said transaction and we consider that the trial court did not err in concluding that so many and different factors were involved that it was not in fact a sale of similar lands. It was not only on the basis of the increment of value of the lands sold to Ramírez de Arellano because they were adjacent to the recreation park the Government had decided to establish in the parcels taken, that the court *a quo* gave no probatory value to said sale, notwithstanding that it cited the cases of Kerr, Shoemaker and Miller, *supra*. Rather, other additional factors existed, and, taking all of them into consideration, it reached said conclusion. Therefore, it can not be held that the court erred in applying the cases of Kerr, Shoemaker and Miller, *supra*, inasmuch as, first, it did not exclude the evidence offered; second, it construed correctly the scope thereof and of § 2 of Act No. 479 of 1946, *supra;* and third, the factor of the increment in the price, for the foregoing reason, was not the only one involved in the instant case as happened in those cases.

The last assignment of both appellants is to the effect that the trial court erred in its mathematical calculations to determine the market value of the parcels taken.

Indeed, following the rule laid down in *United States* v. *Iriarte,* 166 F. 2d 800 (C. A. 1, 1948) [6] and since all the

---

[6] In that case the court said at page 804:

"Nor is the Government's contention sound that lot sales cannot be used to indicate the value of undeveloped acreage. See *United States* v. *3.544 Acres of Land,* 3 Cir., 147 F. 2d 596.

"To be sure evidence of the sales price of lots may be misused in valuing acreage. Obviously it would have been patent error for the court

parties agreed,[7] the court admitted in evidence five deeds of sale of urbanized lots offered by the appellants and five similar deeds of sale offered by the appellee. It then added the price paid for these ten lots [8] and dividing by ten it obtained an average of $8.15 per square meter. All the parties agree that the court *a quo* erred in finding out said average for the correct result is $8.84 per square meter. The court then proceeded, on the basis of the $8.15, to make the following calculations as to the different parcels:

"A—OCEAN PARK PARCEL:

| | |
|---|---|
| Gross proceeds = 14430 M² × $8.15 | = $117, 604. 50 |
| Assuming that this amount includes a 25% profit, this constitutes 125% of the investment = $117,604.50 ÷ $1.25 | = 94, 083. 60 |
| Urbanizer's profit: | |
| $117,604.50 less $94,083.60 | = 23, 520. 90 |
| Cost of the development of the urbanization | = 40, 836. 63 |
| Value of the land | = 53, 246. 97 |

below to have followed the landowners' suggestion and valued their land by simply multiplying the number of square meters in it by the average price per square meter at which Canejas sold his lots. That method of valuation leaves out of account the cost of subdivision and sale of lots, and also the allowance which would have to be made for the reduction in area available for sale by lots resulting from the necessity for laying out streets, etc. The question in cases of this sort is the value of the land before subdivision, not afterward, and certainly the price a promoter would pay for undeveloped land suitable for subdivision would be influenced by the price he would expect to get per lot after subdivision. But, of course, he would also take into account the expense of development . . . "

[7] This notwithstanding, see our decision in *People* v. *Cementerio Buxeda, Inc.*, 72 P.R.R. 307, now pending appeal in the Court of Appeals for the First Circuit.

[8] Appellants Segarra and González argue that in one of the deeds they presented two lots were sold and that, consequently, the lots sold were eleven in all and that the court should have added the price of eleven lots and not of ten, and have divided by eleven and not by ten. We feel that we should not interfere with the judicial discretion of the court *a quo* in making its calculations on the basis of ten instead of eleven sales.

Cost per square meter:
$53,246.97 ÷ 22416.69 M² = 2. 38"

"B—PARCEL OF SEGARRA AND GONZÁLEZ:

Gross proceeds = 40088 M² × $8.15 = $326, 717. 20
Assuming that this amount includes a
 25% profit, this constitutes 125% of
 the investment = $326,717.20 ÷ $1.25 = 261, 373. 76
Urbanizer's profit:
$326,717.20 less $261,373.76 = 65, 343. 44
Cost of the development of the urban-
 ization = 138, 299. 44
Value of the land:
$261,373.76 less $138,299.44 = 123, 074. 32
Cost of the land per square meter:
$123,074.32 ÷ 60778.86 M² = 2. 025"

To this value of $2.38 and $2.025 per square meter of the lands of Ocean Park and Segarra and González, respectively, the court, taking other sales into account, awarded an additional increase and fixed the value of a square meter of Ocean Park at $2.75 and of Segarra and González at $2.50.

The appellee argues that even admitting the mathematical error committed by the court upon finding out the average, if the calculations were made on the basis of $8.843 per square meter, which is the correct average, the result would be $2.73 per square meter for Ocean Park and $2.39 per square meter for Segarra and González, which would be less than the $2.75 and $2.50 awarded. Appellee is not right. In thus arguing he fails to take into consideration the fact that the lower court awarded an increase of approximately 25 per cent per square meter to the value originally obtained by virtue of said calculations. (See footnote 5, p. 76 of the record.)

Appellants argue on their part that this Court should increase said 25 per cent of the value per square meter obtained after making the correction in the calculations based on the $8.843 per square meter. We do not think that we

should do it for we are unable to determine if, as a matter of fact, the lower court would have awarded said increase despite the value per square meter obtained as a result of the new calculations, once the mathematical error were corrected. We consider that this question should be decided in the first instance by said court.

In view of the foregoing, the judgment rendered will be vacated and the case remanded for further proceedings consistent with this opinion in connection with the third assignment of error.

Mr. Justice Negrón Fernández took no part in the decision of this case.