An appropriate order will be entered.

**UNITED STATES of America, upon the relation and for the Use of the TENNESSEE VALLEY AUTHORITY**

**v.**

**137 ACRES OF LAND, MORE OR LESS, IN MARION COUNTY, TENNESSEE, Hunley W. Acuff and wife, Hazel M. Acuff.**

**Civ. A. No. 4773.**

United States District Court
E. D. Tennessee, S. D.

Nov. 9, 1967.

---

Charles J. McCarthy, Gen. Counsel, TVA, Thomas A. Pedersen, Asst. Gen. Counsel, TVA, Knoxville, Tenn., and James H. Eldridge, Knoxville, Tenn., for plaintiff.

Raulston & Swafford, Howard G. Swafford, Jasper, Tenn., for defendants.

## OPINION

FRANK W. WILSON, District Judge.

This is an action for condemnation of land by the United States for the use of the Tennessee Valley Authority in connection with the construction of the Nickajack Dam and Reservoir upon the Tennessee River. The case was begun pursuant to the Tennessee Valley Authority Act of 1933 [48 Stat. 58, as amended, 16 U.S.C. §§ 831–831dd and 1958; Supp. IV, 1959–1962]. A declaration of taking was filed pursuant to 40 U.S.C. § 258a simultaneously with the filing of the suit upon August 4, 1966, and a deposit was entered at that time in the amount of $34,000, being the amount estimated to be just compensation for the property taken. Ninety per cent of this sum has heretofore been distributed to the landowner, in accordance with the rules of this court, by order entered August 29, 1966.

The case has now been duly heard by three commissioners appointed by the Court. An award in the sum of $121,700 was concurred in by two commissioners. The third commissioner, finding an award in the sum of $34,000 to be just compensation, filed a dissent. Each party has filed exceptions to the award. The Tennessee Valley Authority excepted upon the ground that the award was excessive, was for a sum greater than just compensation, was not supported by the evidence, was contrary to the evidence and was contrary to the law. The landowner excepted to the award upon the ground that the award was inadequate.

Following the setting of this case for hearing by a three-judge panel, the parties entered a stipulation waiving a hearing by a three-judge panel and agreeing to a hearing before the undersigned sitting as a single judge. The case has now been heard de novo upon the record made before the commissioners, in accordance with the provisions of the Tennessee Valley Authority Act.

Since the hearing of this case the landowner has filed a motion to be allowed to reopen the proof to the extent of introducing additional evidence with respect to value. The additional evidence sought to be introduced relates to the landowner's claim of enhanced value of his land due to the construction of an interstate highway interchange abutting upon his land. It is represented that the additional evidence relates to the sales of other interstate highway interchange property occurring since the hearing before the commissioners. The Tennessee Valley Authority has objected to the defendant's motion to reopen the proof both upon the ground that the evidence would be cumulative and upon the ground that the evidence of sales occurring subsequent to the date of taking are generally inadmissible. One of the principal issues

in this lawsuit is the admissibility and relevancy of evidence of enhancement in the value of the landowner's property due to the construction of an interstate highway interchange. Accordingly, the Court will reserve any ruling upon the defendants' motion to reopen the proof pending a resolution of this issue.

This case involves the condemnation of a 137 acre tract of farm land located in Marion County, Tennessee, approximately four miles east of Jasper, Tennessee. The entire farm is being taken so that there is no issue with regard to severance damages or benefits. The farm is located on the old East Shell Mound Road, having a frontage of approximately 3,000 feet along the road and extending back from the road for a depth varying from 1500 to 2700 feet. The back side of the farm abuts against Little Cedar Mountain, and in this area a strip of land some 200 to 400 feet wide, running the length of the farm, consists of mountain wood land. There are approximately 14 acres in this wood land. The remaining 123 acres are cleared and suitable either for pasture or crop land, 34 acres being in rolling pasture land and the remainder being suitable either for pasture or for crop lands. The only structural improvement upon the land is a two-story farm house. The house is a frame and log structure which has been added to from time to time. It appears to have been in a moderate state of repair at the time of the taking. There had formerly been a barn upon the land, but this had burned a month prior to the taking. The farm had been used in recent years for raising cattle. ·

A total of eight witnesses testified as to the value of the condemned farm. This testimony varied from a low of $31,000 to a high of $138,100. The major source of variance in values between the witnesses was with respect to whether there should be included within the valuation the enhancement occasioned by the construction of an interstate highway interchange at the north end of the farm. Each of the four witnesses for the landowner included a value for the enhance-

ment thus occasioned and testified to values ranging between a low of $114,377 and a high of $138,100. Included within these were values of from $70,000 to $90,000 as being the enhancement value due to the construction of the interstate highway interchange abutting the north end of the farm. Each of the four government witnesses testified to values, not including any enhancement due to the highway interchange, ranging between a low of $31,000 and a high of $34,000. The government witnesses were also asked to include the enhancement value occasioned by the construction of the interstate highway interchange, and on this basis testified to values ranging from a low of $75,500 to a high of $100,000. Thus, values ranging between $45,000 and $69,000 were testified to by the government witnesses as being the enhancement value due to the construction of the interchange. Two of the commissioners, holding the enhancement value due to the interstate highway interchange would be a proper element of damage, and finding $90,000 to be the amount of such enhancement value, awarded a total of $121,700 as just compensation for the land taken. The third commissioner, concluding that any enhancement value due to the interstate highway interchange was not a proper element of damage, found that $34,000 would be just compensation for the land taken. Before considering further the evidence with respect to the value of the land taken, the Court will accordingly turn its attention to the evidence as it relates to the construction of the interstate highway interchange.

The interstate highway linking Nashville, Tennessee, and Chattanooga, Tennessee, is designated as I-24. It has been under construction during recent years and portions of it remain uncompleted as yet. As early as January 1, 1960, the Tennessee Highway Department submitted for approval of the Federal Bureau of Public Roads plans for the construction of a portion of I-24 to be located in Marion County, Tennessee. These plans reflected that I-24 would cross Shell Mound Road in the vicinity of Acuff

farm, but that Shell Mound Road would be bridged and no access to the interstate highway would be provided at this crossing. During the same year, 1960, the Federal Bureau of Public Roads approved the plans as thus submitted. No contract for construction of I-24 in this area was let until sometime after 1964. In the meantime, upon February 18, 1963, the Board of Directors of the T.V.A. approved the project for construction of the Nickajack Dam and Reservoir on the Tennessee River. This dam was to be located in Marion County, Tennessee, a short distance downstream from where it was proposed that the interstate highway, I-24, would cross the Tennessee River. The Nickajack Project was publicly announced by the T.V.A. on April 5, 1963, and on December 31, 1963, Congress approved funds for the project. From the inception of the Nickajack project in 1963, the T.V.A. had proposed to take the entire Acuff farm, which is now the subject of this condemnation action, as a part of the needed reservoir area.

Following announcement of the Nickajack Project, the T.V.A. promptly set about to seek an alteration of the I-24 interstate highway plans so as to have included an interchange for access to the interstate highway in this vicinity on Shell Mound Road. As a part of their efforts in this respect, the T.V.A. met with officials of the Tennessee Highway Department and the Federal Bureau of Public Roads. They submitted data in support of allowance of the interchange, including traffic estimates reflecting that 400 to 500 vehicles per day would use the interchange by 1975 for access to the dam and recreational areas, in addition to 2532 vehicles per day using the interchange for other purposes. A part of the efforts of the T.V.A. to induce the placing of an interchange at Shell Mound Road was the agreement by the T.V.A. to relocate and rebuild Shell Mound Road from the site of the interchange to the dam, a distance of 2.7 miles. As a result of these negotiations, the State of Tennessee recommended the location of an interchange at Shell Mound Road, and

upon September 17, 1964, the Federal Bureau of Public Roads approved the location of an interchange at that point. These matters are all reflected in correspondence filed in the record (Exhibits P-4, P-5 and P-6), as well as in the testimony of the witnesses Morrison and Calvert. Thereafter, the agreement between the Tennessee Valley Authority and the State of Tennessee was summarized with respect to all matters pertaining to highway construction and highway relocation in the Nickajack Reservoir area by a contract entered into between the parties under date of November 6, 1964 (Exhibit 24). Included within this contract was a commitment upon the part of the State to construct an interchange at Shell Mound Road. Also included was the commitment of the T.V.A. to donate to the State the I-24 right-of-way within the reservoir area and to relocate and build Shell Mound Road from the interchange to the dam.

The present condemnation action was filed August 4, 1966, and the land was taken the same date by the filing of a declaration of taking and the deposit in court of a sum equal to the estimated value of the land. Prior to August 4, 1966, the State of Tennessee had acquired a small portion at the northern end of the subject farm as a right-of-way for the interstate highway and had let a contract for construction of the interstate highway in the area, including the construction of interchange ramps at Shell Mound Road. It appears that the interchange was in the process of construction at the time the defendant's farm was taken upon August 4, 1966, so that on the date of taking the defendant's farm occupied the southwest quadrant of the interchange. It was under these circumstances that the landowners' witnesses placed a value of from $70,000 to $90,000 upon the ten acres of the farm adjacent to the interchange, and values on the remainder of the farm ranging from $37,440 to $48,100. It was also under these circumstances that the government witnesses excluded any enhancement value due to the interchange in making their appraisals.

■ Where the United States exercises the right of eminent domain in taking land for a public improvement, the rule appears well settled that no allowance will be made for enhancement in value of the land taken due to the establishment and construction of the project for which the land is taken, provided that the taking of the land was contemplated from the commencement of the project and was not the result of an enlargement of a previously existing governmental project. Kerr v. South Park Commissioners, 117 U.S. 379, 6 S.Ct. 801, 29 L.Ed. 924 (1886); Shoemaker v. United States, 147 U.S. 282, 13 S.Ct. 361, 37 L.Ed. 170 (1893); United States v. Chandler-Dunbar Water Power Co., 229 U.S. 53, 33 S. Ct. 667, 57 L.Ed. 1063 (1913); Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236 (1934); United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L. Ed. 336 (1943); United States v. Certain Lands in Town of Narragansett, 180 F. 260 (C.C.D.R.I.1910); International Paper Co. v. United States, 227 F.2d 201 (5th Cir., 1955); and United States v. 2,477.79 Acres of Land, Etc., 259 F.2d 23 (5th Cir., 1958). Thus, in the case of Kerr v. South Park Commissioners, 117 U.S. 379, 6 S.Ct. 801, 29 L.Ed. 924, the Court sustained the trial court in disallowing evidence in an eminent domain action of increased values of property fronting on a municipal park by reason of establishment of the park, where the issue was as to the value of the land being condemned to establish the park. A similar conclusion was reached by the Court in the case of Shoemaker v. United States, 147 U.S. 282, 13 S.Ct. 361, 37 L.Ed. 170. In the case of United States v. Chandler-Dunbar Water Power Co., 229 U.S. 53, 33 S.Ct. 667, 57 L.Ed. 1063, involving the taking of riparian property for a navigation improvement project, the Court stated the rule to be as follows:

"The value should be fixed as of the date of the proceedings, and with reference to the loss the owner sustains, considering the property in its condition and situation at the time it is taken, and not as enhanced by the purpose for which it was taken."

The Court in the case of Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236, had this to say in affirming the rule that no enhancement would be allowed by reason of the project for which the land was being taken: "But the value to be ascertained does not include, and the owner is not entitled to compensation for, any element resulting subsequently to or because of the taking." In the case of United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, the Court was confronted with the problem of enhancement occurring between the date of establishment of the government project and the date of the taking. The Court held that if the land being condemned were included within the government project from the beginning, although not initially taken, then upon its taking the government should not be required to pay any increase in value arising from the project. "The owners ought not to gain by speculating on probable increase in value due to the Government's activities." Finally, as stated by the Court in United States v. 2477.79 Acres of Land, Etc., 259 F.2d 23, involving property taken for a flood control project: "The compensation payable for these tracts should not include any increase or enhancement of value which results from the project for which they were taken."

Having stated the general rule, there remains the problem of determining when enhancement in value may properly be considered to have been so causally related to the government project as to be excluded from consideration in assessing damages in an eminent domain action. There appears to be a dearth of authority defining the essential nature of this causal relationship.[1] The commissioners, in

1. An annotation at 145 A.L.R. 7 deals generally with the subject of offsetting benefits in eminent domain actions. At p. 110 the analogous problem of the necessary causal relationship between the benefit to be offset and the public improvement is dealt with, but the annotation, while recognizing the close relationship between the problem of offsetting benefits and disallowing enhancement,

their majority opinion, although not citing authority on this particular issue, rely upon authority on the analogous problem of when benefits accruing to lands retained by the landowner may be offset against the value of the property condemned. Of course in the present case no issue with respect to the offsetting of benefits arises, as the entire farm was taken. The rule in regard to the offsetting of benefits, as relied upon in the commissioners majority opinion, and as taken from the annotation in 145 A.L.R. 7 at p. 110, is as follows:

> "Whether benefits are general or special, it is generally agreed that only those benefits can be taken into consideration which arise from the particular improvement for the purpose of which the owner's land is taken or damaged, and not those which have no causal connection with such improvement, but are derived from other previous or subsequent improvements, even though made by the condemnor, or from improvements *made by third persons* rather than by the condemnor, or from the growth of public improvements, or from the growth of the city and the shifting of business and population centers, or any other independent causes."

The above rule in regard to the necessity of a causal connection between the public improvement and the benefits sought to be offset is also restated in similar language in 27 A.L.R.2d 374.

Dealing more directly with the problem of when enhancement values are so related to the public improvement as to be subject to disallowance in an eminent domain action, the rule is stated as follows in 4 Nichols, Eminent Domain, Sec. 12.3151 (Rev. 3rd Ed.1962):

> "The general rule is that any enhancement in value which is brought about in anticipation of and by reason of a proposed improvement is to be excluded

in determining the market value of such land * * * "

Given the foregoing rules, there remains the problem of applying these rules in the context of the particular facts here presented. In determining whether the construction of the interstate highway interchange at Shell Mound Road was or was not so causally related to the T.V.A. Nickajack Dam and Reservoir project as to be considered "brought about" by reason of the project and thus in effect a part of the project, the parties each appear to lay great emphasis upon the testimony of the witness Morrison, the state highway location engineer, and in particular that portion of his testimony wherein he testified as follows:

> "Q  Now, Mr. Morrison, with regard to this interchange at East Shellmont Road, without the TVA project, Nickajack Dam, would there have been an interchange there according to the plans?

> "A  According to our planning, prior to the dam, the Nickajack Dam, we did not contemplate putting them on there. Now of course as the years roll around, well, that is something else, I couldn't say just outright that there would not be one there if it wasn't for that."

The T.V.A. contends that the foregoing testimony establishes that the State of Tennessee would not have decided or elected to build the interchange at Shell Mound Road but for the existence of the T.V.A. Nickajack Dam Project in the area. Thus, it is contended the interchange is so closely related to the T.V.A. Nickajack Project as to warrant the application of the rule that no enhancement value should be allowed by reason of the existence of the interchange. The landowner, on the other hand, contends that the foregoing testimony establishes that the T.V.A. Nickajack Project was but one factor inducing the decision and elec-

---

expressly excludes the problem of when enhancements would be disallowed. The general problem of enhancement values in eminent domain actions is considered in another annotation at 147 A.L.R. '36,

but this annotation expressly excludes cases wherein it does not clearly appear that the enhancement value was due to the contemplated improvement.

tion of the State to build the interchange at Shell Mound Road, and that, as indicated by the witness Morrison, it is at best problematical whether or not the T.V.A. Nickajack Project was the decisive influence. In this regard the landowner points out the fact that the great bulk of the anticipated traffic cited as justification for the interchange arose from sources other than the T.V.A. project, the T.V.A. project furnishing an estimated traffic count of only 400 to 500 vehicles a day and traffic otherwise originating furnishing over 2500 vehicles a day. Moreover, the landowner contends that the interchange was in fact built by the State of Tennessee and not by the T.V.A. and the interchange was in fact already in existence upon the date the defendant's land was taken by the T.V.A. on August 4, 1966.

The Court is of the opinion that the crux of the matter lies not in whether the T.V.A. Nickajack Project was or was not a decisive influence upon the State of Tennessee in making an election to establish an interchange at Shell Mound Road. If the interchange was established as a matter of election on the part of the State of Tennessee, even though that election may have been solely induced by the existence of the T.V.A. project, the Court is of the opinion that the interchange could not be considered a part of the T.V.A. project so as to deny enhancement value unto the defendant upon the taking of his land for the T.V.A. project. A voluntary election on the part of the State, or on the part of the State and the Federal Bureau of Public Roads, to place an interchange at or near a government project does not make that interchange such a part of the government project itself as to deny enhancement value arising from the existence of the interchange when property is taken for the government project.

In the Court's opinion the crux of the matter here, however, is not that the State of Tennessee merely made an election to establish an interchange at Shell Mound Road. The crux of the matter is that the State of Tennessee contracted with the T.V.A. to establish an interchange at Shell Mound Road. Thus, the State of Tennessee, in return for commitments and consideration on the part of the T.V.A., contracted to build an interchange at Shell Mound Road (Exhibit 24). The interchange was in fact built by the State of Tennessee, not as a result merely of an election upon its part, however that election may have been induced, but rather in fulfilment of a legal contractual commitment made by the State of Tennessee to the T.V.A. By this contract, the construction of the interchange became as much a part of the T.V.A. Nickajack Project as any other portion of the project let out under contract.

The Court is accordingly of the opinion that any enhancement value to the defendant's farm by reason of the construction of the interstate highway interchange at Shell Mound Road was brought about and arose out of the T.V.A. Nickajack Dam and Reservoir Project. Evidence of such enhancement value would accordingly not be competent for the purpose of establishing just compensation and such evidence should be excluded. Having so concluded, it is apparent that the defendant's motion to be allowed to reopen the proof to submit further evidence of such enhancement value should be denied. Although the interchange was under construction at the time the present action was filed, it is undisputed that the taking of the defendant's land had been contemplated from the inception of the Nickajack Project. Thus, as stated by the Court in United States v. Miller, 317 U.S. 369 at 377, 63 S.Ct. 276 at 281: "The owners ought not to gain by speculating on probable increase in value due to the government's activities."

Returning now to the admissible evidence in this case upon the issue of value, and without attempting to summarize the testimony of each witness, the Court is of the opinion that the evidence preponderates in favor of a finding that the fair market value of the 137 acre farm here taken as of the date of taking was in the sum of $34,000. A judgment will enter accordingly.