**SURFSIDE OF BREVARD, INC., et al.,**
Appellants,

v.

**UNITED STATES of America,**
Appellee.

No. 26292.

United States Court of Appeals
Fifth Circuit.

Aug. 11, 1969.

William D. Jones, Jr., David W. Foerster, James E. Hodge, Jones, Foerster & Hodge, Jacksonville, Fla., J. Russell Hornsby, Orlando, Fla., for appellants.

Francis G. Rearick, Department of Justice, Land Division, Orlando, Fla., Edward F. Boardman, U. S. Atty., Tam-

pa, Fla., Frank B. Friedman, Raymond N. Zagone, Attys., Dept. of Justice, Washington, D. C., Clyde O. Martz, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for appellee.

Before JOHN R. BROWN, Chief Judge, and GEWIN and GOLDBERG, Circuit Judges.

GEWIN, Circuit Judge:

The appellants are thirteen corporations and an individual. The corporations owned, subject to purchase money mortgages, certain lands condemned by the United States in August 1961 for establishment of the National Aeronautics and Space Administration's manned lunar landing facility at Cape Canaveral, Florida, now Cape Kennedy. The individual, Reading, held the unsatisfied purchase money mortgages. A jury in the United States District Court for the Middle District of Florida fixed the sum of $1,694,713 as just compensation for the taking.

The single issue on this appeal is whether the district court erred in excluding from jury consideration evidence relating to the appellant corporations' acquisition of the land from appellant Reading for a purchase price in excess of three million dollars. We hold that this evidentiary exclusion was error and that the judgment must be reversed.

In May 1960, the land in question was owned by Reading. He desired to sell the property and listed it with a real estate brokerage firm for that purpose. The property remained unsold in November 1960, at which time Reading proposed that that the brokerage firm buy and develop the land. Negotiations followed and Reading entered into a contract of sale with one of the corporate appellants, Surfside of Brevard, which was created by officers of the brokerage firm to take title to the property. The contract of sale described the land in terms of fourteen separate tracts. Prior to the consummation of the sale, thirteen corporations, in addition to Surfside, were created, each to take title to one tract of the Reading property. In March 1961, the sale was consummated between Reading and the fourteen corporations for a total purchase price of $3,496,500. There is evidence that $5,000 cash was paid by Surfside at the time the sales contract was executed. The contract provided that an additional cash payment of $53,000 would be made when the sale was consummated; there is no evidence that this payment was in fact made. The balance of the purchase price was evidenced by fourteen promissory notes, each executed by one of the corporations and secured by a purchase money mortgage encumbering the tract held by the corporation. Prior to the valuation proceeding below, a third party showed superior title to the tract held by one of the fourteen corporations and, therefore, that tract, which was encumbered by a purchase money mortgage for $8,400, and the corporation which claimed title to the tract are not involved in this litigation.

The district court ruled that the transaction between appellant Reading and the appellant corporations did not constitute a sale for cash or its equivalent and that, therefore, evidence of the transaction was inadmissible.[1] There was no determination by the court that the sale was not an arms-length transaction or that it was merely a contrivance to inflate the award in the condemnation suit. The record contains evidence that arrangements of the kind here involved are not uncommon in Florida real estate transactions.

▇▇▇▇ The fifth amendment to the Constitution guarantees that just compensation shall be paid for the public taking of private property. Market value is the standard employed to measure

---

1. The following is from the court's finding:

From a preponderance of the evidence, the Court finds that the evidence conclusively demonstrates that the said contract between Arthur K. Reading and wife, together with the deeds pursuant thereto, and the fourteen corporations, did not constitute sales for cash or its equivalent.

just compensation[2] and it is generally recognized that an important element in determining market value is evidence of a prior recent sale of the property.[3] A respected treatise on eminent domain states:

> When a parcel of land is taken by eminent domain, the price which the owner paid for it when he acquired it is one of the most important pieces of evidence in determining its present value, provided the sale was recent, and was a voluntary transaction between parties each of whom was capable and desirous of protecting his own interests, and no change in conditions or marked fluctuation in value has occurred since the sale.[4]

Also qualifying the admissibility of a prior sale is the requirement that the sale be transacted for cash or its equivalent.[5] The ruling by the district court that the credit transaction in the case sub judice did not possess this characteristic is vigorously challenged by the appellants who contend that the promissory notes and mortgages given and received in consideration of the sale constituted terms equivalent to cash.

██ There is, indeed, authority to support the proposition that a credit sale involving notes and mortgages may constitute a sale on terms equivalent to cash. The District of Columbia Circuit has held that a sale made in consideration of deferred purchase money notes which can be turned into cash is a sale on terms equivalent to cash and constitutes probative evidence of market value.[6] Other courts, both state and federal, as well as commentators, have approved a similar rule.[7] The interest to be promoted by a rule which excludes evidence of a prior sale merely because it was a credit transaction is relatively insubstantial when balanced against the interest served by allowing the evidence. While an exclusionary rule would save the jury from the task of discounting the credit price to its present cash equivalent, the rule would sacrifice important evidence needed in reaching a determination of market value.[8] In view of prevailing business practices, a

2. United States v. Cors, 337 U.S. 325, 332, 69 S.Ct. 1086, 93 L.Ed. 1392 (1949); United States v. Miller, 317 U.S. 369, 374, 63 S.Ct. 276, 87 L.Ed. 336 (1943).

3. United States v. Miller, 317 U.S. 369, 374–375, 63 S.Ct. 276, 87 L.Ed. 336 (1943); United States v. 2,872.88 Acres of Land, etc., 310 F.2d 775, 779 (5th Cir. 1962); International Paper Co. v. United States, 227 F.2d 201, 208 (5th Cir. 1955); United States v. Ham, 187 F.2d 265, 269–270 (8th Cir. 1951); United States v. Certain Parcels of Land, 144 F.2d 626, 629, 155 A.L.R. 253 (3d Cir. 1944); Baetjer v. United States, 143 F.2d 391, 397 (1st Cir. 1944).

4. 5 Nichols Eminent Domain § 21.2 at 410–11 (4th ed. 1962).

5. Shoemaker v. United States, 147 U.S. 282, 303, 13 S.Ct. 361, 37 L.Ed. 170 (1893); Kerr v. South Park Comm'rs, 117 U.S. 379, 386, 6 S.Ct. 801, 29 L.Ed. 924 (1886); United States v. Leavell & Ponder, Inc., 286 F.2d 398, 404, (5th Cir. 1961).

6. Riley v. District of Columbia Redevelopment Land Agency, 100 U.S.App.D.C. 360, 246 F.2d 641, 643–644 (1957), en banc.

7. United States v. Certain Parcels of Land, 144 F.2d 626, 630, 155 A.L.R. 253 (3d Cir. 1944); Arkansas State Hwy. Comm. v. Rhodes, 240 Ark. 565, 401 S.W.2d 558, 560 (1966); Bartlett v. Medford, 252 Mass. 311, 147 N.E. 739 (1925); 5 Nichols, Eminent Domain § 21.1 (4th ed. 1962); Orgel, Valuation Under Eminent Domain § 140 (2d ed. 1953). Cf. United States v. Leavell & Ponder, Inc., 286 F.2d 398, 403–404 (5th Cir. 1961).

8. Such factual determination are typical of functions juries perform almost daily. In United States v. Certain Parcels of Land, supra, the Court observed:
   There are numerous circumstances in which a jury must determine the present cash value of future sums of money, and this difficulty in the present case affords insufficient ground for excluding the proffered evidence.

rule excluding credit sales would substantially reduce the instances when prior sales could be introduced. For these reasons, we refuse to adopt a rule which would systematically exclude prior credit sales.

■■ We, nevertheless, must consider the Government's contention that the peculiar character of the credit transaction involved in this case supports the district court's conclusion that the sale was not for cash or its equivalent. The mortgages received by Reading from the purchasing corporations were second mortgages, the corporations having given to third parties first mortgages securing promissory notes totaling $62,000. The first and second mortgages exceeded the purchase price of the property. The Government points out that the corporate notes given to Reading were not secured by personal liability and that the total capitalization of the corporations was only $8,000. The notes bore no interest and were due and payable fifteen years from the date of execution. While these factors undoubtedly decreased the case equivalent of the land's credit price, we think it is unrealistic to conclude that they diminished the cash equivalent to zero. The circumstances surrounding the credit sale did not render the transaction inadmissible, but rather constituted evidence to be considered by the jury in determining the measure of the transaction's cash equivalent. The jury should be permitted to consider not only these aspects of the transaction but other proffered evidence relevant to the cash equivalent of the credit price. We believe this evidence and the jury's own general knowledge and understanding of credit conditions in the community, combined with a proper instruction by the court, should enable the jury to determine the cash value of the prior sale and, thereby, enable it to proceed more ably in its determination of market value.[9]

The judgment is reversed and the case is remanded for retrial.

Reversed and remanded.

JOHN R. BROWN, Chief Judge, concurring:

I concur in the holding and Judge Gewin's opinion for us. I would emphasize merely that while sale on credit can satisfy the requirement that the sale be one for cash or its equivalent, the critical thing here is the present market cash value of the deferred payments and security, if any. On the record here, the landowner failed altogether to furnish any evidence upon which the trier could determine this element. Perhaps it was justified in doing so in view of the Trial Judge's indicated determination to exclude all the evidence which we hold admissible. But now that it is to go in, it is a part of the burden of one attempting to prove "equivalency" to offer proof of the present cash value of the deferred obligations and security. Standing alone it is, to me, just so much paper.

---

**9.** *See* Riley v. District of Columbia Redevelopment Land Agency, 100 U.S.App.D.C. 360, 246 F.2d 641 (1957), en banc.