418 F.2d 15
 TRANSWESTERN PIPELINE COMPANY, Plaintiff-Appellant,
v.
A Right-of-Way for a Gas Transmission Pipeline in Sections
10, 11, 30, 31, and 50, all in Block F, Gunter & Munson,
Maddox Brother & Anderson Survey, Winkler County, Texas,
owned by Wm. D. O'BRIEN, Wm. D. O'Brien, Independent
Executor & Co-Trustee under Will of Lysle Lynn O'Brien,
Deceased, American State Bank, Lubbock, Texas, Mrs. Velma
Gills and L. V. Gills, Wink, Texas, Mrs. Thelma Northcutt,
Pecos, Texas, A. A. O'Brien, Wickett, Texas, Mrs. Georgia
Clements, et vir., H. A. Clements, Monahans, Texas, Ellis H.
(Pat) O'Brien, and Mrs. Polly Massey and Harold Massey, her
husband, Wickett, Texas, Defendants-Appellees.
 No. 26631.
 United States Court of Appeals Fifth Circuit.
 Oct. 30, 1969, Rehearing Denied Dec. 2, 1969.
 
 Tom R. Scott, Midland, Tex., John B. Holstead, James W. McCartney, Lynn R. Coleman, Frank F. Smith, Jr., Vinson, Elkins, Weems & Searls, Houston, Tex., Bullock & Scott, Midland, Tex., for plaintiff-appellant.
 Robert Scogin, Finley & Scogin, Kermit, Tex., for defendants-appellees.
 Before BELL and THORNBERRY, Circuit Judges, and CHOATE, Senior District judge.
 THORNBERRY, Circuit Judge.
 
 
 1
 Transwestern, appellant, as the holder of a Certificate of Public Convenience and Necessity issued by the Federal Power Commission for the construction of pipeline facilities, sought to condemn a sixty-six foot pipeline easement running through five sections of the appellees' (hereafter referred to as Landowners) 21,240 acre ranch located in Winkler County, in far West Texas, for a total taking of forty acres. The ranch is located in an arid part of Texas and is populated principally by yucca, cactus, sandhill grasses, mesquite, catclaw and burro grass. None of it is in cultivation and the surface is used only for cattle grazing purposes. The ranch, however, has many oil wells, tank batteries and other oil field equipment, and is crisscrossed with numerous pipeline easements and gathering lines.
 
 
 2
 The district judge referred the case to three Commissioners pursuant to rule 71A(h) of the Federal Rules of Civil Procedure, and issued to the Commissioners the court's charge containing specific instructions on the measure of value and standards for the receipt of evidence. The Commissioners found the overall fair market value of the tract from which the easement was taken to be thirty dollars per acre. They further found that the value of the land within the easement strip itself was four hundred and one dollars ($401) per acre before the condemnation, and one dollar ($1) per acre after the condemnation, for total damages of sixteen thousand dollars ($16,000) for the forty-acre strip itself. The Commissioners also separately found damages to the remainder of the tract (21,200 acres) of five thousand, three hundred dollars ($5,300), for a total award of twenty-one thousand, three hundred dollars ($21,300). The district judge accepted the Commissioners' award, and Transwestern takes this appeal from the district court's judgment.
 
 I.
 
 3
 In his charges to the Commissioners, the district judge instructed that they 'should not permit the parties to introduce evidence which would not be admissible in a trial before a jury in this Court.' They were further instructed to report separately, as the two basic elements of compensation, the damage to the strip of land being condemned and the damage, if any, to the remainder of the tract from which the easement strip is taken. This was to be determined by comparison of the differences in value before and after condemnation for both the easement strip and the remainder. In applying the 'measure of Compensation,' they were instructed that:
 
 
 4
 The term 'value' as used herein is that sum of money which could have been obtained for the property in question on the open market on the date of taking, considering all of the circumstances; that is, it is the amount in terms of cash or its equivalent that, in all probability, would have been arrived at by fair negotiations between an owner, willing to sell and a purchaser willing and able to buy, neither being under any compulsion to act, and a reasonable time being allowed for negotiation.
 
 
 5
 This is a correct definition of market value. Market value is not an end in itself, but merely a means of ascertaining 'just compensation,' which is the value of the land taken plus the damages to the land not taken. As the district judge rightly recognized, by fair market value is meant the amount of money that a purchaser willing but not obliged to buy the property would pay to an owner willing but not obliged to sell it, taking into consideration all uses to which the land was adapted and might in reason be applied. United States v. Miller, 1942, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336; United States v. Virginia Electric & Power Co., 1961, 365 U.S. 624, 81 S.Ct. 784, 5 L.Ed.2d 838. The general rule is to permit proof of the varied elements of value-- that is, all the facts that the owner would properly and naturally press on the attention of a buyer with whom he is negotiating a sale and all the facts that would naturally influence a person of ordinary prudence desiring to purchase.
 
 
 6
 Transwestern appeals this case because it believes that the award of the district court did not reflect the true market value of the easement taken. Specifically, Transwestern argues that the district court erred in accepting and expressly approving the Commissioners' report because the Commissioners' just compensation award was based on sales of other easements to parties having the power of eminent domain, and thus was contrary to the law and to the court's charge.
 
 
 7
 The general rule is that the price paid at voluntary sales of land similar to that taken at or about the time of the taking is admissible as independent evidence of the value of the land taken. Jones v. United States,258 U.S. 40, 42 S.Ct. 218, 66 L.Ed. 453. Market value, as previously indicated, is the price at which an article sells in the open market. The comparative sales approach enables the court to reason by comparison as to how much a prospective purchaser would pay and an owner accept for the property being condemned as of a certain date. Not all comparable sales, however, may be introduced as independent evidence of the value of the land taken. In Slattery Co., Inc. v. United States, 5th Cir. 1956, 231 F.2d 37, this Court stated:
 
 
 8
 Appellee * * * cites many cases from this circuit and elsewhere, laying down the rule that 'The prices paid in settlement of condemnation proceedings or the sum paid by the condemnor for similar land, even if proceedings have not been begun, is inadmissible.' This rule, based upon the view that such payments are in the nature of compromise to avoid the expense and uncertainty of litigation and are not fair indications of market value, is the generally prevailing rule in this circuit and elsewhere. The only recognized exceptions to it are in cases where the fact that parties were condemnor and condemnee either was not known or had no influence because the sale was not in connection with, or in anticipation of, condemnation proceedings.
 
 
 9
 As Judge Hutcheson indicated in Slattery, the reason for excluding sales to buyers possessing the power of eminent domain as evidence of market value is that those sales may be taken by the commissioners or jury as indicating true market value when in fact they do not. A company condemning land might be willing to pay more than it is worth, and the owner of land might be willing to take less than it is worth in order to avoid a lawsuit. Since a landowner would prefer to reach an agreement rather than be subjected to a lawsuit by a condemnor, a sale to a company possessing the power of eminent domain is more likely to show a compromise value than the true market value of the land. It would also be to the benefit of the company to avoid a time-consuming and asset-wasting lawsuit and thus the condemnor, too, is likely to compromise and perhaps pay more than the market value. See Nichols, Eminent Domain 21.33.
 
 
 10
 Appellant persuasively argues that another reason for disregarding the evidence of sales to buyers possessing the power of eminent domain, at least in this case, is that the easement sales utilized by the Landowners' appraiser were negotiated on the basis of a certain number of dollars 'per rod.' The price per rod is not a useful figure in determining fair market value of the easement area because sales based on a per rod basis include the value and damages to the strip of land plus damages to the remainder of the tract. Furthermore, overlying all of the negotiations is a consideration of the expense of condemnation (where the acquiring company has the power of eminent domain) and the economic pressures of acquiring the right-of-way so that the construction may be completed and the proposed facility placed in operation. Furthermore, consideration of the expense and lost motion involved in relocation, additional construction, pipe and material costs and delay-- none of which relate to the fair market value-- are inevitably involved. It is for these reasons that most jurisdictions exclude evidence of sales to condemning authorities. There is no basis for translating a dollar per rod settlement figure into a market value per acre figure. Nichols, in discussing this matter, stated:
 
 
 11
 The landowner, on the one side, may force a sale, and the condemnor, on the other, must have the land, even though it costs more than its value. Again, the circumstances and surroundings are necessarily dissimilar, and the amount paid is not only the value of the land actually taken, but also the damages done to the entire tract depending upon the exigencies of the location of the parcel acquired, the number of acres in the estate, and other facts peculiar to the particular case. All incidental damages are included, and these, of course, should not be taken into account in fixing the acreage value in the market. Evidence as to damages paid in one case would certainly not be admissible in order to determine the damages done in another. Such testimony does not, after all, go to the market value of the land, except incidentally, and it is not a reasonable or fair test of market value.
 
 
 12
 Nichols, Eminent Domain, 21.33.
 
 
 13
 The Landowners weakly argue that the exclusion rule is no longer the law in this Circuit.[1] But it is the law and we see no reason for changing it. Never mind, argue the Landowners, the evidence presented in this case comes within the exception to the Slattery rule because the easement sales at issue were 'voluntarily made with no mention of condemnation.' The exception to the exclusion rule is that evidence of sales made to buyers possessing the power of eminent domain is admissible 'in cases where the fact that parties were condemnor and condemnee either was not known or had no influence because the sale was not in connection with, or in anticipation of, condemnation proceedings.' Slattery Co. v. United States, supra. Transwestern argues that this Court has never adopted the exception to the Slattery rule and should not. It is true that this Court has never specifically adopted the exception to the exclusion rule, but we think it a sensible exception if given its properly narrow interpretation.
 
 
 14
 The party claiming the exception bears the burden of proving that the comparable sales are voluntary; that is, he must show that the sales in question were made willingly, without coercion, compulsion, or compromise. Sales to buyers possessing the power of eminent domain should be admitted as independent evidence of market value only when it is certain that those sales truly represent the market value of the land in question. That necessarily means that the party relying on the exception to the exclusion rule must show that the sales were uninfluenced by the buyer's possession of the eminent domain power. The burden is a heavy one. The Landowners did not meet that burden. There were conclusionary statements by one of the Landowners that the sales offered into evidence were 'voluntary,' and that no threats of condemnation were made to the vendors. Nothing more was offered to meet the Landowners' burden. Something more was needed.[2]
 
 
 15
 It is clear that the Commissioners' report and the district judge's memorandum opinion that the court's just compensation award was largely based on evidence that was inadmissible. Therefore, the district court's findings on just compensation were clearly erroneous and we must reverse the district court's judgment and remand the case for further proceedings not inconsistent with this opinion. We will now briefly consider problems raised on appeal that may recur on retail.
 
 II.
 
 16
 As previously stated, it seems that the Commissioners and the district judge based the just compensation award mainly on the sales of other easements to buyers possessing the power of eminent domain. Additionally, the Commissioners stated that they took into account, without attempting to quantify the significance thereof to their award, the following factors:
 
 
 17
 (1) 'The fact that (Transwestern) did not place any limitation on the size of the lines to be laid in the easement, nor their number';
 
 
 18
 (2) That Transwestern was acquiring the right of ingress and egress over the entire 21,200 acres without agreeing to keep the roads in good state of repair; and
 
 
 19
 (3) That there could be no paved road across the easement.
 
 
 20
 In light of these statements by the Commissioners, Transwestern argues that the district court erred in accepting the Commissioners' award because it was based on incorrect legal and factual assumptions and is not supported by adequate findings. Transwestern argues that it was seeking authority for only one pipeline, therefore it is apparent that the Commissioners were confused as to what was being taken, and it must be presumed that this confusion prejudicially affected their determination of just compensation for the taking. The fact remains, however, that Transwestern's pleading did not specifically state that it was seeking authority for only one pipeline. It is within the Commissioners' discretion to draw reasonable inferences from the condemnor's pleadings. We assume that on retrial, Transwestern will avoid what it regards as prejudicial inferences on the part of the Commissioners by stating specifically in its pleadings that it seeks authority for only one pipeline.
 
 
 21
 With respect to the Commissioners' statement that Transwestern was acquiring the right to use roads over the entire ranch without agreeing to keep such roads in good repair, the only testimony concerning any roads by the Landowners indicates that such roads are either state highways, county-maintained roads, or lease roads, presumably maintained by oil companies. Transwestern argues that since heavy traffic already exists over the ranch by reason of the extensive oil field development, it would be utterly unreasonable to expect Transwestern to maintain in good repair such roadways. Therefore, argues Transwestern, the Commissioners' award of Five Thousand, Three Hundred Dollars ($5,300) for damages to the remainder, based upon twenty-five cents per acre for each of the 21,200 acres, is arbitrary and excessive. If the award of $5,300 were based solely on the fact that Transwestern refused to keep the existing roads in good repair, we would agree that the award would be arbitrary and excessive. However, it is impossible to determine from the Commissioners' report the importance they attributed to Transwestern's refusal to keep the roads in good repair. It is equally impossible to discern the importance they attributed to other factors they relied upon to determine damages to the remainder. We hold that the Commissioners' findings on the matter of damages to the remainder of the tract are insufficient. In United States v. Merz, 1964, 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629, the Supreme Court stated:
 
 
 22
 We do not say that there must be an array of findings of subsidiary facts to demonstrate that the ultimate finding of value is soundly and legally based. The path followed by the commissioners in reaching the amount of the award can, however, be distinctly marked. Such a requirement is within the competence of laymen; and laymen, like judges, will give more careful consideration to the problem if they are required to state not only the end result of their inquiry, but the process by which they reached it.
 
 
 23
 The Commissioners' findings on damages to the remainder of the tract were not specific enough to allow the district court to decide whether the Commissioners' findings were clearly erroneous.
 
 
 24
 Transwestern further argues that there is no evidence to support the Commissioners' statement that there could be no paved road across the easement and that this improperly construes the statement in Transwestern's pleading that 'no structures, paving or other permanent obstruction shall be located on or over the right-of-way.' Transwestern's right-of-way supervisor testified that Transwestern has no objection to roadways being constructed across the easement so long as it can have access to the pipeline. The Commissioners were under no duty to accept the supervisor's testimony and were free to draw reasonable inferences from Transwestern's pleadings, including an inference that a paved road could not be laid across the easement. Transwestern can avoid this problem on retrial by amending its pleadings on this matter.
 
 III.
 
 25
 The Commissioners were instructed by the district court's charge to evaluate separately '(i) the damage to the strip of land which is subject to condemnation, (ii) the damage, if any, to the remainder of the tract from which the easement strip is taken * * *', and to determine and report separately: '(i) the difference in value before and after condemnation, of the easement strip * * * and (ii) the difference in value, if any, before and after condemnation of the remainder of the tract from which the easement strip is taken and any damage by virtue of rights acquired in the remaining tract.' Transwestern approved this charge 'as to form.' After the conclusion of the hearing before the Commissioners, but prior to the issuance of their report, Transwestern requested that the Court give the Commissioners a supplemental charge as follows:
 
 
 26
 That the sum of the compensation for the damages to the strip of land which is subject to condemnation and the damage to the remaining tract shall be the equivalent to the compensation determined by comparing the fair market value of the entire tract affected by the taking before and after the taking; that is to say, it should be equivalent to the sum of money obtained by subtracting the fair market value of what remains after the taking, from the fair market value of the whole immediately before the taking.
 
 
 27
 The court overruled Transwestern's motion, stating that the charge previously given had been agreed to and approved by the court. On retrial, the district court's charge should substantially conform to Transwestern's requested charge because it states the correct measure of value in federal court condemnation. See United States v. Virginia Electric & Power Co., 1961, 365 U.S. 624, 81 S.Ct. 784, 5 L.Ed.2d 838; Dugan v. Rank, 1963, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15; United States v. Trout, 5th Cir. 1967, 386 F.2d 216; United States for Use Tennessee Valley Authority v. Brumfield, 5th Cir. 1966, 354 F.2d 882; 2,953.15 Acres of Land, More or Less, in Russell County, State of Ala. v. United States, 5th Cir. 1965, 350 F.2d 356.
 
 
 28
 Reversed and remanded.
 
 
 
 [1]
 The Landowners cite United States v. Leavell & Ponder, Inc., 5th Cir. 1961, 286 F.2d 398, and United States v. Benning Housing Corp., 5th Cir. 1960, 276 F.2d 248, in support of their proposition. In neither case, however, is any issue raised with respect to the exclusion rule pertaining to sales to condemning authorities
 
 
 [2]
 There is a dispute as to whether three of the sales offered as evidence of market value were sales to buyers having the power of eminent domain. On retrial, if Transwestern objects to the introduction of these sales on the basis of the exclusion rule, the Landowners must offer proof that these sales were made to buyers who did not possess the power of eminent domain