**UNITED STATES of America**

**v.**

**5.00 ACRES OF LAND, MORE OR LESS, SITUATE IN ORANGE COUNTY, STATE OF TEXAS, and the Firestone Tire & Rubber Company et al.**

**UNITED STATES of America**

**v.**

**6.90 ACRES OF LAND, MORE OR LESS, SITUATE IN ORANGE COUNTY, STATE OF TEXAS, and the Firestone Tire & Rubber Company et al.**

**UNITED STATES of America**

**v.**

**8.41 ACRES OF LAND, MORE OR LESS, SITUATE IN ORANGE COUNTY, STATE OF TEXAS, and KWW Associates et al.**

Civ. A. Nos. B–78–170–CA–1547–3, B–78–176–CA–1547–3 and B–78–169–CA–1547–3.

United States District Court, E. D. Texas, Beaumont Division.

Jan. 29, 1981.

---

John H. Hannah, Jr., U. S. Atty., Tyler, Tex., Harry W. McKee, Asst. U. S. Atty., Beaumont, Tex., Thomas P. Carolan, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for plaintiff.

George W. Brown, Jr. and Earl S. Hines, Brown & Hines, Beaumont, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

JOE J. FISHER, District Judge.

This is an eminent domain case. Presently before the Court are the Amended Report and Findings of the Condemnation Commission (Report) appointed to determine the issue of just compensation in this cause, the objections to the Report filed by the parties, and two motions filed by the Defendants. As will appear more clearly below, the Court will approve the Report, as amended, with one modification. The Motion of the Defendants to Award Costs of Suit will be denied and their Motion to Award Interest will be granted.

On March 7, 1978, the United States of America as Plaintiff filed a complaint and declaration of taking and obtained an order of immediate possession and a judgment vesting title pursuant to the Declaration of Taking Act, 40 U.S.C. § 258a *et seq.* That same day the Plaintiff deposited into the Registry of the Court the sums of thirty-thousand, eight hundred eighty-eight dollars ($30,888.00) as the amount of estimated just compensation for the taking of tracts nos. 313E–1 and E–2, eight thousand, one hundred ninety-five dollars ($8,195.00) for tracts nos. 314E–3 and E–4, and ten thousand, seven hundred sixty-nine dollars ($10,-769.00) for tracts nos. 338E–1 and E–2.

These tracts are located in a highly industrialized portion of Orange County, Texas. The estate acquired by the Plaintiff was a perpetual, assignable fifty-foot easement for multiple pipelines and a twenty-five-foot temporary work easement for a period of three years, beginning on the date of the taking. The authority for the taking was recited to be the Declaration of Taking Act, 40 U.S.C. § 258a *et seq.*, the general authorization statute, 40 U.S.C. § 257, and the Energy Policy and Conservation Act, 42 U.S.C. § 6201, *et seq.*, as modified by the Department of Energy Organization Act, 42 U.S.C. § 7101 *et seq.* Funds for the acquisition of these lands were appropriated by the Acts of Congress approved June 1, 1976, Pub.L.No.94–303, and July 31, 1976, Pub.L. No.94–373. The tracts were taken for the purpose of establishing the Strategic Petroleum Reserve and related facilities, specifically, for the construction of multiple oil pipelines.

The issue of just compensation for the taking was referred to a condemnation commission (Commission) appointed pursuant to Rule 71A of the Federal Rules of Civil Procedure [1] and these three actions were consolidated for trial. In ruling on

1. All references are to the Federal Rules of Civil Procedure, unless indicated otherwise.

the objections of the parties to the Report of the Commission, the Court is to apply the clearly erroneous standard governing the reports of special masters. Rules 71A(h), 53(e)(2). *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 689, 66 S.Ct. 1187, 1193, 90 L.Ed. 1515 (1946); *Livas v. Teledyne Movible Offshore, Inc.*, 607 F.2d 118, 119 (5th Cir. 1979). This is the same standard governing review by a court of appeals of findings of fact by a district court. *NLRB v. Sequoia District Council of Carpenters*, 568 F.2d 628, 631 (9th Cir. 1977); *Oil, Chemical and Atomic Workers International Union v. NLRB*, 547 F.2d 575, 580 (D.C. Cir. 1976), *cert. denied*, 431 U.S. 966, 97 S.Ct. 2923, 53 L.Ed.2d 1062 (1977). Thus, the findings of the Commission "come here well armed with the buckler and shield" of the clearly erroneous rule. *Horton v. United States Steel Corp.*, 286 F.2d 710, 713 (5th Cir. 1961). This standard has been described as follows:

> The findings of the master come with a strong presumption of validity but they are not given the effect of a verdict of a jury. The parties are entitled to a real review by the court to determine whether the findings were clearly erroneous. A finding by the master is clearly erroneous when, although there is evidence to support it, the court on the entire evidence is left with the definite and firm conviction that a mistake has been made. * * * A finding may be set aside even though it is supported by substantial evidence if the court is convinced that it is clearly wrong. At the same time a finding must stand, even though the court thinks it is against the preponderance of the evidence, if the court does not consider it clearly erroneous.

9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2614 at 810–11 (1971) (footnotes omitted). Under this standard,

the Court will proceed to rule on the objections of the parties.

*The Plaintiff's Objections:*

**A.**

The subject property is a fifty-foot wide strip of land located immediately adjacent to an existing pipeline corridor. The Commission found that the highest and best use of the property was the use to be made of it by the Plaintiff, *i. e.*, pipeline right-of-way and easement. The Plaintiff has objected to this finding, and asserts that it is clearly erroneous. This objection need not detain us for long.

 By highest and best use is meant either some existing use on the date of taking, or one which the evidence shows was so reasonably likely in the near future that the availability of the property for that use would have affected its market price on the date of taking and would have been taken into account by a purchaser under fair market conditions. *Olson v. United States*, 292 U.S. 246, 255, 54 S.Ct. 704, 708, 78 L.Ed. 1236 (1934); *United States v. 320.0 Acres of Land*, 605 F.2d 762, 781 (5th Cir. 1979). Normally, because of economic pressures, the existing use of the subject property represents its highest and best use. *United States v. Buhler*, 305 F.2d 319, 328 (5th Cir. 1962). Here, the subject tracts abut on an existing pipeline corridor.[2] The evidence shows that the property was used for pipeline purposes as early as 1956, transcript at 113, and that at the time of the taking there were twelve pipelines already in place in the corridor. Transcript at 243. The Commission's finding as to highest and best use is not merely not clearly erroneous; it is eminently correct. The Plaintiff's objection will be overruled.

**B.**

 The Plaintiff has also objected to the method used by the Commission in valu-

---

2. A pipeline corridor was defined for the Commission as:

> a long narrow strip of land, having utility [for] various communications and transportation purposes between two or more points [where its] service or functions are feasible and where they are needed. According[ly]

properties can be used for many purposes[:] shortline railroads, highways, drainage ditches, chemical gas pipelines. However, these uses are not just limited to that, but they are normally a straight stretch of land. Transcript at 199.

ing the subject tracts, urging that the failure to use the before and after method was clear error. The before and after method is normally employed where the condemnor takes only a portion of a larger tract.

Stated generally, the correct measure of value in a case involving condemnation of part of a tract is the fair market value of the entire tract immediately before the taking less the fair market value of the remainder immediately afterwards.

*United States v. Trout*, 386 F.2d 216, 219 (5th Cir. 1967). *See United States v. 101.88 Acres of Land*, 616 F.2d 762, 768–69 (5th Cir. 1980). The choice of method of valuation is a legal conclusion and, if wrong, is not entitled to the shield of the clearly erroneous rule. *United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 526, 81 S.Ct. 294, 297, 5 L.Ed.2d 268 (1961); *Spray-Bilt, Inc. v. Ingersoll-Rand World Trade, Ltd.*, 350 F.2d 99, 103 (5th Cir. 1965). However, it must be remembered that the before and after method is appropriate only where part of a larger tract is taken.

■■■ The Commission found that such was not the case here. Its finding was that

[t]he Commission was faced with the problem of a piece of property, admittedly attached to and adjacent to a larger tract of property owned by the same land owner, however, having been severed by uses inconsistent with the use of the balance of the property. The particular tracts under consideration have been effectively severed from the main body of the ownership by previous easements and grants given to others. These easements caused an alienation of the use of the particular tracts here condemned. They are in this particular alley being used for pipelines. * * * The Commission has taken into consideration that the usual way of appraising property is to take the parent tract's valuation and subtract therefrom the value of the part left in the land owner, thus giving credit for enhancement or devaluation of surrounding property still in the hands of the land owner. It is felt in this particular situa-

tion that this method of appraisal is inappropriate in that by the granting of easements which are perpetual in nature, the land owner has previously severed these tracts from the parent tract leaving a remainder that must stand on its own feet.

Report at 6. The Report continues:

Thus the Commission feels that the Government's contention that the proper method of evaluation is the appraisal of the entire parent tract and then of the remainder thus leaving the value of the taken part is not accepted by the Commission as it is felt that for all practical purposes there was a severance by previous conveyance and the tract here under consideration is a separate, distinct, freestanding pipeline corridor.

*Id.* at 9–10. The party attacking a finding of the Commission has the burden of demonstrating that such finding is clearly erroneous. *In re Multiponics, Inc.*, 622 F.2d 709, 723 (5th Cir. 1980); *Goodman v. Highlands Insurance Co.*, 607 F.2d 665, 667 (5th Cir. 1979). The Plaintiff has failed to carry its burden of persuasion. Its objection speaks only to the Commission's method of valuation, while the true issue is the finding that the subject tracts were not taken from larger tracts but were severed by previous conveyances and at the time of the taking were a separate and distinct pipeline corridor. The Plaintiff's objection does not address this issue. Nonetheless, upon a careful review of the entire record, the Court cannot say that such finding was clearly erroneous. *Cf. Baetjer v. United States*, 143 F.2d 391, 395 (1st Cir.), *cert. denied*, 323 U.S. 722, 65 S.Ct. 131, 89 L.Ed. 618 (1944). The objection will be overruled.

C.

The Plaintiff has further objected to the use by the Commission of sales of pipeline easements to oil and pipeline companies. It contends that these sales were not properly comparable sales, as they did not reflect the true market value of the subject property.

The constitutional mandate of just compensation[3] means that the landowner is entitled to be paid for the fair market value of the land taken at the time of the taking. *United States v. Fuller*, 409 U.S. 488, 490, 93 S.Ct. 801, 803, 35 L.Ed.2d 16 (1973); *United States v. Miller*, 317 U.S. 369, 374, 63 S.Ct. 276, 280, 87 L.Ed. 336 (1943); *United States v. 320.0 Acres of Land*, 605 F.2d 762, 781 (5th Cir. 1979). Fair market value for the condemned property "is what a willing buyer would pay in cash to a willing seller." *Miller*, 317 U.S. at 374, 63 S.Ct. at 280. In determining fair market value,

> consideration is to be given to all the facts and circumstances that would reasonably go into the making of a bargain of purchase and sale between a willing buyer under no obligation to buy and a willing seller under no obligation to sell. Market value is not, of course, a quality which inheres in the property itself, but is rather a reflection of that state of mind of the public with respect to the property. That state of mind may be established by the testimony of expert witnesses who are qualified by their special knowledge, investigations and study to give an opinion as to what they believe it to be, or by evidence of transactions reasonably close in time involving other comparable property from which the market value of the property in question may be directly deduced by the fact finder himself. Evidence of such comparable transactions may also be received from expert witnesses in support of their opinions as to the value of the property involved in the litigation.

*United States v. Smith*, 355 F.2d 807, 809 (5th Cir. 1966) (citations omitted). The best evidence of market value is usually prior sales of the same property, reasonably close in time to the taking and not forced. *Surfside of Brevard, Inc. v. United States*, 414 F.2d 915, 917 & n. 3 (5th Cir. 1969).

In the present case, the Plaintiff condemned a fifty-foot wide strip of land across the Defendants' property in order to lay multiple pipelines. As there were several pipelines already in place at the time of the taking immediately adjacent to the subject tracts, there were comparable sales of the same property in evidence. All the comparable sales used by the Commission were of recent vintage, the oldest being consummated on January 18, 1979. Report at 4.[4] Some of these sales were made to pipeline companies with the power of eminent domain, while others were not. The Plaintiff's comparables were all of industrial property and not of pipeline easements. As the Commission had previously determined that the highest and best use of the subject property was for pipeline easements, the comparables submitted by the Plaintiff were not considered.

The Plaintiff urges that none of the comparables used by the Commission were competent evidence, since considerations other than fair market value figured into the sale prices. There is support for the Plaintiff's contention in the case of *Transwestern Pipeline Co. v. O'Brien*, 418 F.2d 15 (5th Cir. 1969), which held that sales to buyers with the power of eminent domain were not to be considered in determining fair market value. This is so because

> [a] company condemning land might be willing to pay more than it is worth, and the owner of the land might be willing to take less than it is worth to avoid a lawsuit. Since a landowner would prefer to reach an agreement rather than be subjected to a lawsuit by a condemnor, a sale to a company possessing the power of eminent domain is more likely to show a compromise value than the true market value of the land. It would also be to the benefit of the company to avoid a time-consuming and asset-wasting lawsuit and thus the condemnor, too, is likely to com-

---

3. U.S.Const. Amend. V.

4. Since the property is to be valued as of the date of the taking, *United States v. Miller*, 317 U.S. 369, 374, 63 S.Ct. 276, 280, 87 L.Ed. 336 (1943), here, March 7, 1978, the valuation ex-

perts applied a discount factor to these sales to allow for the time differential between the date of taking and the dates of the comparable sales. Transcript at 133.

promise and perhaps pay more than the market value.

*Id.* at 18.[5] The Plaintiff would have the Court rule, with *O'Brien*, that all sales to buyers with the power of eminent domain were not to be considered by the Commission.

In addition, the Plaintiff urges that the comparable sales to Continental Oil Company, which did not have the power of eminent domain, transcript at 63, should also be excluded because Continental was acting under economic duress. The Commission considered in its Report two comparable sales to Shell Pipeline Company, which had the power of eminent domain, transcript at 9, and six sales to Continental. Report at 4. In so doing, the Commission considered that the power of eminent domain and economic duress would be factors that go to the weight of the evidence and not to its admissibility. *Id.* at 10.

 To disallow all sales to pipeline companies as the Plaintiff urges would be to disallow *all* evidence of comparable sales. Transcript at 194; Report at 10. The Commission's duty, imposed by the fifth amendment, was to award just compensation for the property taken. The Commission could not discharge that duty by relying on pure speculation. *Olson v. United States,* 292 U.S. 246, 257, 54 S.Ct. 704, 709, 78 L.Ed. 1236 (1934). There must be *some* evidence in the record for the Commission to base its award upon. The Court feels that the Commission admirably dealt with this quandary by considering the comparable sales objected to by the Plaintiff, while keeping the substance of its objection in mind. This is the preferred procedure outlined by the fifth circuit in the recent case of *United States v. 320.0 Acres of Land,* 605 F.2d 762 (5th Cir. 1979). In that case, Chief Judge Brown, addressing a virtually identical issue, reasoned as follows:

The fairness of an evidentiary exclusion may be entirely different, however, if the exclusion would eliminate all or nearly all of the "most comparable" sales. For then the parties would be forced to resort to sets of "less comparable" sales (sales much further removed in time or distance, or sales of properties with markedly different characteristics), and the very factors that diminish the comparability of these sales vis-a-vis the excluded sales may significantly favor one party and disadvantage the other. Nor would the exclusion necessarily expedite the trial proceedings in these circumstances, for it is likely that more time and effort would be devoted to litigating whether and what sort of adjustments must be made to reflect the greater dissimilarities between the condemned property and the "less comparable" sales.

Thus, where an evidentiary exclusion would eliminate the "most comparable" sales available, the better course would be to admit the possibly tainted sales with appropriate instructions, permit the parties to present testimony pro and con regarding whether the sales are tainted and how much the taint distorts true market value, and then instruct the factfinder as to what elements of value must be included or excluded from the compensation award.

*Id.* at 801–02 (footnotes omitted). Having read the transcript of the hearing before the Commission, the Court is satisfied that it was sufficiently apprised of the problems associated with the "tainted" comparable sales by counsel and feels that no purpose would be served by remanding the case to the Commission with appropriate instructions. There was no error. The Plaintiff's objections are overruled.

Alternatively, the Court holds that the Plaintiff has demonstrated no harm resulting to it from the Commission's consideration of comparable sales to buyers with the

---

5. There is an exception to this exclusionary rule, not relevant here, where the evidence shows that "the fact that parties were condmenor and condemnee either was now known or had no influence because the sale was not in connection with, or in anticipation of, condemnation proceedings." *O'Brien,* 418 F.2d at 19 (quoting *Slattery Co. v. United States,* 231 F.2d 37, 41 (5th Cir. 1956)).

power of eminent domain. The evidence at the hearing shows that possession of the power of eminent domain tends to lower the price of the property. Transcript at 173–74. If any damage resulted from the consideration of such sales, it was to the Defendants, who have not complained to the Court. Therefore, the Court finds that any error here was harmless as to the Plaintiff and did not affect its substantial rights. Rule 61.

D.

[redacted] The Plaintiff's fourth objection goes to the Commission's failure to follow the valuation testimony given by its expert, Mr. Aulbaugh. Again, this objection need not occupy the Court for long. Mr. Aulbaugh's valuation was based entirely on his opinion that the highest and best use of the subject property was for industrial use. As his testimony did not touch upon the value of a pipeline easement, the Commission did not err in declining to follow his valuation. The Plaintiff's objection is overruled.

E.

The final objection of the Plaintiff goes to the failure of the Commission to find that there was no diminution in value to the oil, gas, and other mineral interests beneath the subject tracts by virtue of the taking. The only evidence adduced at the hearing on this was to the effect that there would be no such diminution in value. Transcript at 407. The failure to include this finding in the Report was in all likelihood a mere oversight. The Report will be modified to provide that there was no diminution in value to the oil, gas, and other mineral interests beneath the subject tracts. Rules 71A(h), 53(e)(2); *United States v. Tampa Bay Garden Apartments, Inc.*, 294 F.2d 598, 603 (5th Cir. 1961).

*The Defendants' Objection*:

[redacted] The Defendants have objected to the Report on the ground that the Commission failed to value the exact estate taken in that the Report does not make any award for the multiple and assignable aspects of the taking. The Commission felt unable to place a value on the right to lay *multiple* pipelines and to *assign* the right to lay pipelines to third parties because there was no evidence in the record upon which it could rely in placing a value on such rights. Report at 14, 16.

Mr. Cook, an expert appraiser upon whose testimony the Commission largely based their award, testified that he was unable to place a value on the right to install multiple pipelines and to assign, as there were no comparables in the market. In this connection, the Chairman of the Commission asked the following question of Mr. Cook:

> CHAIRMAN OSBORNE: We'll start on an assumption here. Would you consider that if more than one pipeline could be laid, would you multiply by that factor? That's the question I'll permit.
>
> A. Mr. Osborne, there are a number of factors that one has to speculate on to arrive at an answer to that question. I, in my study of the data, I found no other situations where anyone else acquired that right, and consequently I'm a real estate appraiser and without data to support a statement. I would hesitate to make one. That is certainly a method of measuring it. The reasonability of that method does not take into consideration the speculative factors which are how many lines they can lay; we don't know that; they can lay as many as nine; they can lay as few as one, and to answer that I think it's very speculative.

Transcript at 166–67. Mr. Hall, another expert appraiser, was likewise unable to place a value on these rights, although he did state that "this is an additional burden on this easement; there is no question about that." Transcript at 233. Mr. Cook was also of the opinion that these rights were worth something, but he could not testify as to any specific value. Transcript at 168.

In order to make an award for these rights, the Commission, and the Court would be forced to resort to speculation as to how many lines the Plaintiff could lay in the fifty-foot easement and as to the value

of the obscure right to assign the right to lay lines to others.[6] The Supreme Court has written that

> [e]lements affecting value that depend upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable, should be excluded from consideration, for that would be to allow mere speculation and conjecture to become a guide for the ascertainment of value—a thing to be condemned in business transactions as well as in judicial ascertainment of truth.

*Olson v. United States*, 292 U.S. 246, 257, 54 S.Ct. 704, 709, 78 L.Ed. 1236 (1934); *United States v. Trout*, 386 F.2d 216, 223 (5th Cir. 1967); *United States v. Buhler*, 305 F.2d 319, 326–27 (5th Cir. 1962). The Court agrees with the Commission that any award for these rights would necessarily be based at this time upon pure speculation and declines to modify the Report in this respect.

However, the obligation to award just compensation for the exact estate taken cannot be totally ignored. The Court's reluctance to award compensation for these elements of the taking should not be construed to foreclose the right of the Defendants to receive just compensation for their taking when an award can be based in actuality, not on conjecture. Therefore, the Court feels that the better course is to sever these aspects from the remainder of the taking and allow the Defendants, if and when the Plaintiff decides to lay additional lines or assign that right to others, to return to the Court for additional compensation.

*Motion for Award of Costs of Suit*:

■ The Defendants have moved the Court for an award of costs, including attorneys' fees, appraisal fees, expert witness fees, and costs of court. They claim such expenses as a part of the just compensation for the taking of their property. However, it is settled law that "[a]ttorneys' fees and expenses are not embraced within just com-

pensation for land taken by eminent domain." *Dohany v. Rogers*, 281 U.S. 362, 368, 50 S.Ct. 299, 302, 74 L.Ed. 904 (1930). The recent case of *United States v. Bodcaw Co.*, 440 U.S. 202, 99 S.Ct. 1066, 59 L.Ed.2d 257 (1979), effectively forecloses discussion of this issue, ruling as it does that neither attorneys' fees, appraisal expenses, nor other costs are recoverable under the fifth amendment. The Motion will be denied.

*Motion for Award of Interest*:

■ The fifth amendment requires the payment of interest as an element of just compensation where the date of taking of the property precedes the payment of the award. *United States v. Miller*, 317 U.S. 369, 381, 63 S.Ct. 276, 283, 87 L.Ed. 336 (1943); *Seaboard Air Line Ry. Co. v. United States*, 261 U.S. 299, 306, 43 S.Ct. 354, 356, 67 L.Ed. 664 (1923); *United States v. 59.29 Acres of Land*, 495 F.Supp. 212, 214 (E.D. Tex.1980). Just compensation is "the full equivalent of the value of [the property] at the time of the taking paid contemporaneously with the taking." *Phelps v. United States*, 274 U.S. 341, 344, 47 S.Ct. 611, 612, 71 L.Ed. 1083 (1927); *Brooks-Scanlon Corp. v. United States*, 265 U.S. 106, 123, 44 S.Ct. 471, 474, 68 L.Ed. 934 (1924). In order to achieve this full equivalent, the Declaration of Taking Act specifically provides that the judgment on a declaration of taking

> shall include, as part of the just compensation awarded, interest at the rate of 6 per centum per annum on the amount finally awarded as the value of the property as of the date of taking, from said date to the date of payment; but interest shall not be allowed on so much thereof as shall have been paid into the court.

40 U.S.C. § 258a.

■ It has been held that the six percent rate provided for in the Declaration of Taking Act is a constitutional minimum and "cannot be viewed as a ceiling on the rate of interest allowable in computing just compensation with respect to a deficiency."

---

**6.** The Court has noted that several of the comparable sales considered by the Commission involved the right to lay two or more lines at

once. *See, e. g.*, transcript at 128, 129, 132, 216, and 224.

United States v. Blankinship, 543 F.2d 1272, 1276 (9th Cir. 1976). *Accord, Miller v. United States*, 620 F.2d 812, 837–39 (Ct.Cl.1980). This case presents one of the situations mentioned in *Blankinship* where a rate of no greater than six percent on the deficiency would contravene the fifth amendment. 543 F.2d at 1276. The factors that lead the Court to this conclusion are the great disparity between the amount of estimated compensation deposited into the Registry of the Court by the Plaintiff[7] and the significant delay between such deposit and the date of the judgment. *Cf. Brown v. United States*, 263 U.S. 78, 86, 44 S.Ct. 92, 95, 68 L.Ed. 171 (1923); *United States v. Sargent*, 162 F. 81, 84 (8th Cir. 1908), *appeal dismissed*, 215 U.S. 618, 30 S.Ct. 410, 54 L.Ed. 351 (1910); *United States v. 59.29 Acres of Land*, 495 F.Supp. 212, 215–16 (E.D.Tex. 1980). Therefore, the Court will award interest on the deficiency at the per annum interest rate applicable to three-year Treasury bonds[8] purchased on the date of taking, for the period from and including March 7, 1978, to the date of payment of the award. The task of calculating the exact amount of the judgment will be left to counsel, who will also submit an appropriate judgment. It is, therefore,

ORDERED, ADJUDGED and DECREED that the Amended Report and Findings of the Condemnation Commission, except as modified in this Memorandum Opinion, is in all things approved, ratified, and adopted. It is further,

ORDERED, ADJUDGED and DECREED that the Motion of the Defendants to Award Costs of Suit is denied, and their Motion to Award Interest is granted.

---

7. The Plaintiff deposited a total of $18,964.00 for the use of Defendant-Firestone. The Commission awarded Firestone $164,611.27. Similarly, the deposit for the use of Defendant-KWW was $30,888.00, while the Commission's award was $96,200.00.

8. This datum appears in the *Treasury Bulletin* and the *Federal Reserve Bulletin*, both of which should be readily accessible to counsel.