UNITED STATES of America

v.

50 ACRES OF LAND, MORE OR LESS, SITUATED IN DALLAS COUNTY, STATE OF TEXAS, and the City of Duncanville, Texas, et al., and Unknown Owners.

No. CA–3–78–1221–D.

United States District Court,
N. D. Texas,
Dallas Division.

Dec. 9, 1981.

Claude Brown, Asst. U.S. Atty., Fort Worth, Tex., for plaintiff.

H. Louis Nichols, Dallas, Tex., for defendant.

## ORDER

ROBERT M. HILL, District Judge.

Came on for consideration before the Court, Honorable Robert M. Hill, presiding, the motions for judgment filed by the United States of America (Government), plaintiff, and the City of Duncanville (City), defendant. Having considered the motions,

the Court is of the opinion that a judgment in the amount of $225,000 plus interest on the amount of the deficiency should be entered.

This is an eminent domain proceeding. The Government has condemned approximately 50 acres of land owned by the City. The Government is seeking to limit the condemnation award to the fair market value as found by the jury. The City, in turn, is seeking to recover the cost for a substitute facility, an amount as found by the jury substantially in excess of the fair market value of the condemned property. Following a trial on the merits, the jury found the fair market value of the land to be $225,000 and the cost of a functionally equivalent substitute facility to be $723,624.01.

■ Under Rule 71A(h), Fed.R.Civ.P., it is for the Court to decide all issues, factual and legal, other than the precise issue of the amount of compensation to be awarded. *United States v. Reynolds*, 397 U.S. 14, 20, 90 S.Ct. 803, 807, 25 L.Ed.2d 12 (1970); *United States v. 158.24 Acres of Land in Bee County, Texas*, 515 F.2d 230, 232 (5th Cir. 1975). Thus, it is for the Court to determine which method of calculating just compensation is to be used. *See Reynolds*, 397 U.S. at 20, 90 S.Ct. at 807.

The Supreme Court has never ruled on the propriety of substitute-facilities compensation for public condemnees. *United States v. 564.54 Acres of Land, More or Less, Situated in Monroe and Pike Counties, Pennsylvania*, 441 U.S. 506, 509 n.3, 99 S.Ct. 1854, 1856 n.3, 60 L.Ed.2d 435 (1979). In *564.54 Acres*, the Supreme Court held that substitute-facilities compensation was not available to a private condemnee, and that allowing the condemnee the fair market value of its property is consistent with the basic equitable principles of fairness underlying the just compensation clause of the Fifth Amendment. *Id.* at 516–17, 99 S.Ct. at 1859–60.

■ The Court is of the opinion that fair market value is the appropriate measure of compensation in this action. The 50 acres of land condemned by the Government had been used by the City as a sanitary landfill. The City presented evidence on the costs it had incurred as a result of purchasing substitute land to be used as a landfill, as well as interim costs it had incurred for garbage disposal while a new site was being located and purchased. However, the City purchased a much larger tract of land than was condemned and the evidence indicated that they paid a premium for this tract. There was no evidence presented of any attempts by the City to acquire any other tracts of land. The evidence also showed that part of the condemned land had already been used to dump waste. The City failed to establish how this would effect the value of a functionally equivalent substitute facility. The City did not meet its burden of establishing what would be a reasonable cost of a substitute facility.

The City contends that the acquisition of permits for a sanitary landfill are difficult to obtain and there are only a limited number of areas for which permits can be obtained, so that the buying and selling of landfill properties on the open market in other areas would not be relevant to the City's ability to acquire a substitute facility. The jury was specifically instructed to determine the reasonable cost of a functionally equivalent substitute landfill, and the City urges that the combination of these two factors supports the jury finding.

■ Assuming the City's assertion that the jury finding is supportable, the fair-market-value standard should still be applied. The normal rule for calculating just compensation is to award the condemnee the fair market value of the condemned property. *564.54 Acres*, 441 U.S. at 511, 99 S.Ct. at 1857. This standard provides a relatively objective working rule that generally strikes a fair balance between the public's need and the claimant's loss upon condemnation for a public purpose. *Id.* at 511–12, 99 S.Ct. at 1857–58. Fair market value, however, is not an absolute standard nor an exclusive method of valuation. *United States v. Virginia Electric & Power Co.*, 365 U.S. 624, 633, 81 S.Ct. 784, 790, 5

L.Ed.2d 838 (1961). There are recognized situations in which the normal rules for calculating just compensation are suspended. The Court must determine whether application of the fair-market-value standard under the facts of this action would be impracticable or whether an award of market value would diverge so substantially from the principle of indemnity as to violate the Fifth Amendment. *564.54 Acres*, 441 U.S. at 513, 99 S.Ct. at 1858. Only when fair market value cannot be determined or would provide inadequate compensation are other measures of value appropriate. *United States v. 3,727.91 Acres of Land*, 563 F.2d 357, 361 (8th Cir. 1977).

The instances in which market value is too difficult to ascertain generally involve property such as roads or sewers, where there is either no market or the property is so infrequently traded that the price obtained in a prior sale would not be representative of the price a sale of the condemned property would bring. *Id.* The vast majority of cases that have utilized the substitute facilities measure of compensation have involved property of this kind. *See, e.g., Caporal v. United States*, 577 F.2d 113 (10th Cir. 1978) (alleyway); *3,727.91 Acres*, 563 F.2d 357 (levees and ditches); *United States v. Streets, Alleys and Public Ways in the Village of Stoutsville*, 531 F.2d 882 (8th Cir. 1976) (streets and alleys); *Franklin County, Georgia v. United States*, 341 F.2d 106 (5th Cir. 1965) (per curiam) (road and bridge); *State of Washington v. Untied States*, 214 F.2d 33 (9th Cir.), *cert. denied*, 348 U.S. 862, 75 S.Ct. 86, 99 L.Ed. 679 (1954) (highway); *Clarksville v. United States*, 198 F.2d 238 (4th Cir. 1952), *cert. denied*, 344 U.S. 927, 73 S.Ct. 495, 97 L.Ed. 714 (1953) (sewer system); *City of Fort Worth v. United States*, 188 F.2d 217 (5th Cir. 1951) (street).

A few cases have extended the application of the substitute facilities measure of compensation to other property deemed reasonably necessary to the public welfare. *See, e.g. United States v. Certain Property Located in the Borough of Manhattan, City, County and State of New York*, 403 F.2d 800 (2d Cir. 1968) (public bath and recreation center); *United States v. Certain Land in the Borough of Brooklyn*, 346 F.2d 690 (2d Cir. 1965) (playground); *United States v. Certain Land in the City of Redbluff*, 192 F.Supp. 725 (N.D.Cal.1961) (parking lot). The test applied in cases utilizing the substitute facilities measure is whether the condemnee is under a factual or legal obligation to replace the facilities. *E.g. Streets, Alleys and Public Ways*, 531 F.2d at 886; *Borough of Manhattan*, 403 F.2d at 803. *See also 564.54 Acres*, 441 U.S. at 515, 99 S.Ct. at 1859.

The Court is of the view that substitute facilities compensation should not be awarded in every case where a public condemnee can establish a duty to replace the condemned property, at least where a fair market value can be established. When the doctrine of cost of substitute facilities is applied, a windfall *necessarily* accrues to the condemnee who is awarded an amount sufficient to replace ancient or depleted facilities with brand new facilities. *Id.* at 517, 99 S.Ct. at 1860 (Justice White concurring). *See also 564.54 Acres*, 576 F.2d 983, 996–1000 (3d Cir. 1978) (Judge Stern concurring). By definition, a market value represents approximately what it would cost to purchase the same or similar property in the marketplace. If the public condemnee receives the market value of its property, it is difficult to perceive how such an award "would impermissibly deviate from the indemnity principle." *564.56 Acres*, 441 U.S. at 514, 99 S.Ct. at 1859. As Justice White remarked:

Obviously, replacing the old with a new facility will cost more than the value of the old, but the new facility itself will be more valuable and last longer. This is true with respect to the condemnation of any facility, whether or not there is an obligation to reproduce it, and I had not understood the Just Compensation Clause to guarantee subsidies to either private or public projects. Similarly, if more demanding building codes or other regulations will enhance the cost of replacement, it is reasonable to assume that compliance itself will be of some benefit

to the owner and hence need not be financed by the condemnor.

*Id.* at 518, 99 S.Ct. at 1861 (Justice White concurring).

The evidence clearly established that there had been a sufficient number of comparable sales from which a fair market value for the 50 acres involved in this action could be determined. The jury finding that $225,000 was the fair market value of the tract in question is amply supported by the evidence. The Court is of the opinion that an award representing the fair market value of the tract does not impermissibly deviate from the indemnity principle; the City is placed in as good a position pecuniarily as if its property had not been taken. The basic principle of just compensation is that the condemnee must be made whole but is not entitled to more. *Olson v. United States,* 292 U.S. 246, 255, 54 S.Ct. 704, 708, 78 L.Ed. 1236 (1934). This principle is satisfied by awarding the City the fair market value of the property taken by the Government.

■ A final issue involves the rate of interest to be awarded on the difference between the condemnation award and the amount deposited with the Court as estimated compensation. The Declaration of Taking Act, 40 U.S.C. § 258a (1970), specifically provides that the judgment on a declaration of taking

> shall include, as part of the just compensation awarded, interest at the rate of 6 per centum per annum on the amount finally awarded as the value of the property as of the date of the taking, from said date to date of payment; but interest shall not be allowed on so much thereof as shall have been paid into the court
> . . . .

In this action, there was a deficiency in the estimated compensation paid into the Court of $25,050.

■ The Fifth Amendment requires the payment of interest as an element of just compensation where the date of taking of the property precedes the payment of the award. *United States v. Miller,* 317 U.S. 369, 381, 63 S.Ct. 276, 283, 87 L.Ed. 336

(1943); *Seaboard Air Line Ry. Co. v. United States,* 261 U.S. 299, 306, 43 S.Ct. 354, 356, 67 L.Ed. 664 (1923); *United States v. 5.00 Acres of Land,* 507 F.Supp. 589, 598 (E.D. Tex.1981). Just compensation requires payment of "the full equivalent of the value of the [property] . . . paid contemporaneously with the taking." *Phelps v. United States,* 274 U.S. 341, 344, 47 S.Ct. 611, 612, 71 L.Ed. 1083 (1927).

The City argues that a rate of interest on the deficiency of only six percent contravenes the Fifth Amendment because of the disparity between the six percent figure and the market rate of interest, so that the City is not receiving the full equivalent for its property. It has been held that the six percent rate provided for in the Act operates only as a floor in computing just compensation and cannot be viewed as a ceiling on the rate of interest allowable. *United States v. Blankinship,* 543 F.2d 1272, 1276 (9th Cir. 1976); *5.00 Acres of Land,* 507 F.Supp. at 598–99. *Accord, Miller v. United States,* 620 F.2d 812, 837–39 (Ct.Cl.1980); *United States v. 429.59 Acres of Land,* 612 F.2d 459, 464–65 (9th Cir. 1980); *United States v. 97.19 Acres,* 511 F.Supp. 565, 567–69 (D.Md.1981); *United States v. 319.46 Acres of Land,* 508 F.Supp. 288, 290–91 (W.D.Okl.1981).

Assuming the principle enunciated in these cases is a sound one, the difficulty arises in calculating a rate of interest to be applied. There is a strong judicial policy in favor of the establishment of a uniform rate of interest applicable in condemnation cases in order to avoid discrimination among litigants. *Miller,* 620 F.2d at 838. The cases have utilized a variety of methods to calculate the interest rate to be applied. *Cf. 97.19 Acres,* 511 F.Supp. at 569 (long-term corporate rate for Aaa bonds for each individual year from date of taking to date of payment); *319.46 Acres,* 508 F.Supp. at 290 (selection of governmental and private securities with varying lengths of maturity, interest rates averaged throughout the period of the deficiency); *5.00 Acres,* 507 F.Supp. at 599 (interest rate applicable to three-year Treasury bonds purchased on

date of taking). Assuming that a proper formula could be determined, the City presented no evidence from which to calculate the applicable interest rate.[1] Therefore, the Court is of the opinion that a six percent interest rate should be applied to the amount of the deficiency. *See Pitcairn v. United States*, 547 F.2d 1106, 1130 (Ct.Cl. 1977) *cert. denied*, 434 U.S. 1051, 98 S.Ct. 903, 54 L.Ed.2d 804 (1978) (Judge Skelton, concurring in part and dissenting in part).

Accordingly, it is ORDERED that the motion for judgment filed by the United States of America is granted, the motion for judgment filed by the City of Duncanville, Texas, is denied, and judgment in accordance with this Order be entered.

---

1. Apparently, other courts have simply taken judicial notice of such publications as the Treasury Bulletin, the Federal Reserve Bulletin and Moody's Composite Index of Yield on Long Term Corporate Bonds. *See e.g. Miller*, 620 F.2d at 840; *97.19 Acres*, 511 F.Supp. at 569; *5.00 Acres*, 507 F.Supp. at 599.